## ALVA C. RICE vs. FRANK P. SHELDON et al.

### JULY 2, 1915.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1) Building Contract. Evidence.*

Defendants, an engineer and a contractor, prepared plans and entered into a contract for the construction of a dam. Owing to the refusal of certain officials to approve the work, plaintiff was invited to confer with them. Plaintiff after pronouncing the plans under which defendants were working unsuited to conditions was requested to prepare a plan. Plaintiff had many consultations with defendants in reference to the work. More than a year after the rendition of these services he sent his bill to one defendant who transmitted it to the other. Prior to receiving the bill the latter wrote plaintiff "I think you better hold back bill for a time at least. I am going into a fight and just what can be effected later on is now hard to tell. I am in hopes however to make your work available at a later period."

*Held,* that the accompanying evidence showed that the introduction of the letter was for the purpose of accounting for the delay in the sending of the bill.

*Held,* further, that the question "will you explain to whom that refers, sending the bill?" asked defendant, in his behalf as well as the question "To whom did you refer in saying you were going into a fight?" were properly excluded, the latter as immaterial and the former because in connection with the undisputed testimony of plaintiff as to conversations with defendant in which latter asked him to hold back his bill until defendant could reach a settlement of his own claim it left no ambiguity which could be explained by oral evidence. It was also immaterial in view of defendant's later letter written after receipt of the bill, in which he discussed the bill without disclaiming personal liability for its payment.

*(2) Evidence.*

Evidence is properly excluded where there is nothing by which the propriety of the testimony can be determined.

*(3) Evidence. Custom.*

In an action to recover for services in preparing plans and in devising a method to assist defendants, when construction work entered into by defendants had stopped, evidence as to custom of architects regarding compensation for plans which are not used, was properly excluded, since plaintiff was not engaged in competition with others in furnishing plans for the work.

JOHNSON, C. J., and SWEETLAND, J., dissenting.

ASSUMPSIT.  Heard  on  exceptions  of  defendants  and overruled.

11

VINCENT, J. This is an action of assumpsit brought to recover the sum of $1,000 as compensation for services rendered by the plaintiff to the defendants in preparing plans for the construction of a dam across the Shetucket River, at Scotland, in the State of Connecticut, and for other services connected therewith.

The declaration is in two counts. The first count alleges an express contract on the part of the defendant to pay the plaintiff the sum of $1,000, and the second count alleges an implied contract to pay for the plaintiff's services.

The defendants pleaded the general issue and claimed (1) that they were not liable for the plaintiff's services, and (2) that the plaintiff's services were not worth $1,000.

At the trial of the case in the Superior Court the jury returned a verdict for the plaintiff for $1,000, the amount claimed. The defendants filed a motion for a new trial upon the grounds that the verdict was against the evidence and that the damages were excessive, which motion was denied.

The defendants claim that the four exceptions, upon which they rely, present two questions for consideration: (1) was evidence admissible showing the custom of architects as to compensation for plans when the same were submitted on request for a special purpose? and (2) was oral testimony admissible to explain a letter of the defendant, Shaw, dated November 20, 1907?

The defendant, Sheldon, a hydraulic engineer, at the instance of the Uncas Power Company, prepared certain plans and specifications for a dam across the Shetucket River, at Scotland, Connecticut. Shaw, the other defendant, a contractor, entered into a contract for its construction.

Sheldon's plans were based on examination and soundings made by one of his employees, and Shaw's contract with the Uncas Power Company was based on such plans and the accompanying specifications. The dam, under the contract, was to be based on solid rock or other suitable foundation. To facilitate the construction of the dam the river was

turned from its natural bed. After a part of the dam foundation had been laid it was discovered that the rock bottom only extended a part of the way across the river bed and that for the remaining distance the bottom was composed of heavy boulders lying in gravel, an unsuitable foundation for the dam.

It is undisputed that the dam was to be built subject to the approval of both the commissioner of dams for the State of Connecticut and the engineer of the Baltic Mill Company. How or in what manner the work became subject to such approval is not important to the present case and need not be discussed. After the discovery of the unsuitable bottom which a portion of the river bed furnished, the commissioner and engineer aforesaid refused to approve the construction of the dam in accordance with the plans of Mr. Sheldon, and the work came to a standstill.

In this emergency the defendants conferred and decided to invoke the assistance of the plaintiff to help them out of their difficulty and directed their superintendent, Oliver H. Briggs, to communicate with and invite him to come to Providence for consultation. In pursuance of this invitation Rice came to Providence, conferred with the defendants, the commissioner of dams for the State of Connecticut and the engineer of the Baltic Mill, subsequently visiting the site of the dam at Scotland. Rice also made an examination of the plans of Sheldon and pronounced them unsuited to the existing conditions, and at the request of the defendants prepared a sketch and subsequently an elaborate plan which was submitted to all of the parties before mentioned. Rice also had a number of consultations and some correspondence with the defendants in reference to the work and as to the manner in which the adaptation of the plans to the situation could best be demonstrated to the commissioner of dams and the engineer before mentioned. More than a year after the rendition of these services by the plaintiff he sent his bill for $1,000 to Mr. Sheldon, who transmitted the same to Mr. Shaw.

The defendants' exceptions are four in number. The first three exceptions relate to the exclusion of testimony by the defendant, Shaw, in explanation of a certain letter written by him to the plaintiff under date of November 20, 1907. The fourth exception relates to the exclusion of testimony offered by the defendant for the purpose of showing the custom as to paying for plans not used.

The letter which forms the basis of the first three exceptions is as follows:

"PROVIDENCE, R. I., Nov. 20th, 1907.
A. C. RICE, M. E.,
     WORCESTER, MASS.
DEAR SIR:—

I think you better hold back with bill for work at Scotland for a time at least. I am going into a fight and just what can be effected later on is now hard to tell. I am in hopes, however, to make your work available at a later period.

Trusting you are well, and prospering during these hard times, I am,
                    Very Respectfully Yours,
                         FREDERICK E. SHAW."

This letter was introduced by the plaintiff, and its introduction was immediately followed by testimony regarding the delay which had occurred in sending the bill. The plaintiff also testified as to conversations with the defendant, Shaw, in which he had been requested by him to hold back his bill until he made a settlement with the Uncas Power Company. All this sufficiently indicates that the introduction of the letter was for the purpose of accounting for the delay in the sending of the bill.

Mr. Shaw, after having the letter read to him, was asked this question: "Will you explain to whom that refers, sending the bill?" That question was ruled out and Shaw was further interrogated: "To whom did you refer in saying that you were going into a fight?"

We think that the evidence as offered was properly excluded. The question as to what fight the defendant, Shaw, was going into was clearly not material. There is nothing in the letter which refers to "sending the bill" to anyone. The request in the letter is that the plaintiff hold back the bill for a time and such request, taken in connection with the undisputed testimony of the plaintiff as to conversations with Shaw, in which the latter asked him to hold back his bill for services until he could reach a settlement of his own claim against the Uncas Power Company, leaves no ambiguity or equivocation which could be properly explained by oral testimony, certainly the form of the question "Will you explain to whom that refers, sending the bill?" is not, when compared with the text of the letter, a proper question. There is no reference in the letter as to sending the bill to anyone in particular. In the transcript of testimony, which appears to contain all of the discussion between counsel and the court relating to the admission of evidence explanatory of this letter, we find nothing from which we can determine the materiality or propriety of the testimony which the defendants desired to offer on that point.

In the next place it is not important in view of the undisputed fact that Shaw had requested the plaintiff to hold back his bill until he had obtained a settlement with the Uncas Power Company, and Shaw's letter of December 4, 1908, written by him after he had received the plaintiff's bill through Sheldon, in which he discusses the amount of the bill without any attempt, either directly or indirectly to disclaim personal liability for its payment.

(2) We think that the exclusion of the explanation was proper for another reason. It does not appear from the offer of the defendants what they intended to prove by way of explanation. The trial court had nothing from which it could determine the propriety of the testimony even assuming that some testimony of an explanatory character could have been properly admitted. Under such conditions the exception of the defendants becomes ineffective. *Crowley* v. *Appleton*, 148 Mass. 98; *Honsucle* v. *Ruffin*, 172 Mass. 420.

(3)    The defendants offered testimony as to the custom of architects regarding compensation for plans which are not used.   We think that such testimony was properly excluded in the present case.   It is undoubtedly the fact that architects and engineers preparing plans in competition with others, each one relying upon the superiority of his work for its acceptance, would not be entitled to compensation if their plans and specifications were properly rejected.   The present case, however, does not present that question.   There is testimony that the plaintiff was not called upon to compete with others in furnishing plans from which one might be selected to the exclusion of others, but was called on in an emergency to devise some method by which the defendants might be extricated from an unfortunate situation.   There seems to be no dispute that the plaintiff rendered the services which he was called upon to render and it does not appear that the plans which he furnished were unsuitable for the purpose for which they were designed.   All the other questions in the case were questions of fact.   The jury has found in favor of the plaintiff for the amount claimed and the trial court has refused to grant a new trial.   We find no error in the rulings of the court.

The defendants' exceptions are overruled and the case is remitted to the Superior Court for judgment on the verdict.

SWEETLAND, J.   (dissenting)   I dissent from the opinion of the majority.

This is an action of assumpsit to recover compensation for professional services which the plaintiff alleges he performed as an hydraulic engineer for the defendants, Frank P. Sheldon and Frederick E. Shaw.

The case was tried before a justice of the Superior Court sitting with a jury and resulted in a verdict for the plaintiff. The case is before us upon the defendants' exceptions to certain rulings of said justice made at the trial excluding testimony offered by the defendants.

It appears from the transcript of evidence that the defendant, Shaw, was a general contractor and had undertaken to build a dam across the Shetucket River, at Scotland, in the State of Connecticut, for the Uncas Power Company, a corporation, in accordance with plans and specifications furnished by the defendant, Sheldon, who was the engineer of said power company. During the progress of the work in August, 1907, it was learned that by reason of the earth formation at the bottom of said river the plans of said Sheldon could not be carried out, except at great expense. The defendant, Sheldon, sought to obtain a plan for the erection of a dam at that place which should be suited to the conditions which had been found in the river bed and which should be satisfactory to said power company and to certain other interested persons. The defendant, Shaw, who had employed the plaintiff previously in other matters, suggested to said Sheldon that he consult with the plaintiff in regard to said new plan. Said Sheldon then requested the plaintiff and also two other engineers to present plans for the erection of said dam. Accordingly the plaintiff prepared the plan and performed the service for which he now seeks compensation. The plan of the plaintiff was not adopted.

At the trial the defendants claimed that they were not liable, because the plaintiff knew that he was performing said services in competition with other engineers and that in such circumstances, in accordance with the custom of engineers when there is no express contract for payment, the plaintiff was not to receive compensation unless his plan was accepted. The defendants further claimed that in any event they were not liable as the plaintiff knew that he was performing said services for the Uncas Power Company and not for the defendants.

The defendants excepted to the ruling of said justice, refusing to allow the defendants' counsel to inquire of the defendant, Shaw, while on the stand as a witness, as to the custom of engineers.

In the question objected to and excluded the defendants' counsel did not clearly indicate as to what custom of engineers he desired information; but in the discussion between court and counsel as to the admissibility of the question the defendants' counsel offered to prove that without an express contract for payment it is the custom among engineers that they are not to be paid for plans which they furnish to prospective clients unless said plans are accepted. The question was excluded on the ground that such a line of inquiry was immaterial. I am of the opinion that the defendant should have been permitted to present evidence of such a general custom by qualified witnesses. Testimony which tends to establish the existence of such an usage known to the parties, is not immaterial. For, if there is such a custom and the parties had knowledge of it, unless such custom is repugnant to their expressed agreement, it must be held to have formed a part of the dealings between them, and to be within their intentions. It is not a reasonable objection to such a question asked of the witness, Shaw, that there was no testimony that such a custom was known to the plaintiff. The plaintiff had been a professional engineer for forty-six years and there is the presumption, until the same is rebutted, that he is familiar with all the general usages of his profession. I am of the opinion, however, that the exclusion of said question does not constitute reversible error, because later the defendants were permitted to show by the witness, Shaw, the custom regarding the compensation of engineers when they are knowingly presenting plans and performing services in competition with other engineers, which the defendants claim were the circumstances of this case; and further the defendants were permitted to show by the witness, Sheldon, what was the custom among engineers with regard to claiming compensation in all cases when the plan of an engineer is not accepted.

The other exceptions upon which the defendants rely are those taken to rulings of said justice excluding two questions asked of the defendant, Shaw, while upon the stand in

regard to the meaning of certain portions of a letter written by Shaw and sent to the plaintiff.   The plaintiff in support of his case had offered in evidence the following letter which he received from said Shaw about three months after performing the services for which he now claims compensation:

"PROVIDENCE, R. I., Nov. 20, 1907.

A. C. RICE, M. E.,
    WORCESTER, MASS.
DEAR SIR:—

I think you had better hold back with bill for work at Scotland for a time at least.   I am going into a fight and just what can be effected later is now hard to tell.   I am in hopes, however, to make your work available at a later period.

Trusting you are well and prospering during these hard times, I am,

Very Respectfully Yours,
    FREDERIC E. SHAW."

The expression in this letter "I think you had better hold back with bill" clearly means "I think you had better not send bill."   That was the interpretation given to the expression by the court and counsel during the discussion of said letter and the right of the defendants to explain its terms. The first of said questions objected to was:   "Will you explain to whom that refers, sending the bill?"   From the discussion of this question set out in the transcript it appears that both court and plaintiff's counsel were aware that by this question the witness was asked to explain from whom the plaintiff was requested to hold back the bill for his work, or in other words, to whom the plaintiff was requested not to send his bill for a time.   The court ruled that "the letter may speak for itself" and excluded the question.   I think this ruling was erroneous.   The general rule excluding parol evidence offered to vary a written instrument has no application to this question.   In considering an exception to the refusal of a trial judge to permit a witness to explain an

expression contained in a letter written by him, the court said in *Honsucle* v. *Ruffin*, 172 Mass. 420: "We should be of opinion that this evidence ought to have been admitted, if that were the only question before us. An entirely different principle applies from that which would govern the interpretation of a contract, will, or other instrument, prepared with a view to legal effect, or relied on as founding an estoppel. The letter was important merely as showing knowledge, or a certain state of mind with regard to the condition of the company, for the purpose of establishing one element of the alleged fraud. Hence, whereas in the case of wills, contracts, etc., we ask what the words used would mean in the mouth of one writing the language in a normal way under the circumstances, here the meaning of the individual, however inconsistent with the words, his actual state of mind, is the thing to be found, and there is no ground of statute, consideration of the rights of others, or policy, to limit our mode of inquiring into it."

The plaintiff states in his brief that said letter was introduced by him as "being an admission on the part of Shaw that he, Shaw, was indebted to Rice." If by this letter Shaw requested the plaintiff to refrain for a time from sending his bill to him (Shaw), it would have strong probative force as an admission of liability on the part of Shaw and a request for further time for payment. However, in said letter Shaw does not in terms ask the plaintiff to refrain from sending his bill to him (Shaw), although that inference may be drawn from the language, and the letter was introduced by the plaintiff for the purpose of having the jury draw that inference. This language also admits of the construction that the plaintiff was requested to withold his bill from some other person. If the jury upon all the testimony properly before it should believe that by this letter Shaw was asking the plaintiff not to send his bill at once to some other person, as for instance, the Uncas Power Company, the letter would lose its force as an admission of liability on the part of Shaw. Parties are held to intend the plain meaning of their language,

but it is always permissible for a party to explain a statement previously made by him either orally or in a letter when such statement is susceptible of two constructions, one consistent and the other inconsistent with his present claim.   The letter in question properly can not be said to speak for itself since upon the precise point for which it was introduced against the defendants it is ambiguous and may mislead the jury. In considering as to the possible force of excluded testimony the party offering it is entitled to the presumption that it would have been favorable to him if admitted.   *Swanson* v. *Allen*, 108 Iowa, 419.   In this case the defendants are entitled to the presumption that, if the question objected to had been answered, the witness would have rebutted the inference which the plaintiff wished the jury to draw from the letter.

In the circumstances of this case, there is no force in the contention that the question was properly excluded because the defendants failed to make a formal offer of what they intended to prove by the answer to said question.   The question was excluded by said justice on the ground that it was not competent for the witness to explain the language in question and the letter must "speak for itself."   The purpose of the question was plain and the explanation of this ambiguous language was material to the defence.   It is not necessary to make an offer of proof when the purpose of the question is apparent and the evidence sought is clearly material.   In considering a similar contention to that of the plaintiff the United States Supreme Court, in *Buckstaff* v. *Russell*, 151 U. S. 626, at 636, said:   "It might be very inconvenient in practice if a party, in order to take advantage of the rulings of the trial court in not allowing questions, proper in form and manifestly relevant to the issues, were required to accompany each question with a statement of the facts expected to be established by the answer to the particular question propounded.   Besides, and this is a consideration of some weight, such a statement, in open court, and in the presence of the witness, would often be the means of leading or instructing him as to the answer desired by the

party calling him. If the question is in proper form and clearly admits of an answer relevant to the issues and favorable to the party on whose side the witness is called, it will be error to exclude it. Of course, the court, in its discretion, or on motion, may require the party in whose behalf the question is put, to state the facts proposed to be proved by the answer. But if that be not done, the rejection of the answer will be deemed error or not, according as the question upon its face, if proper in form, may or may not clearly admit of an answer favorable to the party in whose behalf it is propounded."

In support of the ruling of said justice the plaintiff has called our attention to a number of Massachusetts cases. The Massachusetts courts have adopted the rule that the admissibility of a question excluded at the trial will not be considered, unless it is made to appear upon the record what answer to the question is expected from the witness. Although feeling itself to be governed by the rule, in a number of cases the court has expressed its reluctance to enforce it. In *Honsucle* v. *Ruffin*, 172 Mass. 420, the court says: "Although always reluctant to do so, we feel bound to apply the rule requiring the excepting party to show what the testimony was expected to be." This court has not formally adopted such a rule and the practice in this State has not been in accord with the Massachusetts practice in that regard. I am of the opinion that *Buckstaff* v. *Rusell*, 151 U. S. 636, *supra*, sets out the more reasonable rule of practice. That is the view taken by a number of the courts in this country. In considering the necessity for making a formal offer of proof when the question propounded is pertinent and material and its object is plain the Court of Appeals of Maryland said, in *County Commissioners of Calvert County* v. *Gantt*, 78 Md. 292: "But the contention is that although the question was a proper one, and there was error in refusing to allow the witness to answer it, such error is no ground for the reversal of the judgment, because the record does not show what would have been the answer,

and for aught that appears to the contrary the defendants were not injured by the refusal. But how could the record show what the answer would have been when the witness was not allowed to answer it? But then it is said the record ought to show what the defendants expected to prove by the witness. In answer to this, it is sufficient to say that the question in itself suggests the objects and purpose for which it was asked, namely, to contradict Gantt who had testified that he turned over to witness uncollected taxes to the amount of twelve thousand dollars. The question being pertinent and material, and the object of it being plain and obvious, the witness ought to have been allowed to answer it. If the witness had been allowed to answer it, how far and to what extent his answer may have influenced the jury in the verdict, no one can say."

In *Mitchell* v. *Harcourt*, 62 Iowa, 349, the court said: "The plaintiff asked one of the defendants, when on the stand as a witness, a question in the following words: 'How much did you owe?' and also other questions, so framed as to elicit the amount the defendants were indebted at the time the attachment was sued out. This evidence was objected to as immaterial and not proper cross-examination, and the objections sustained. The latter objection is not now insisted on." . . . "But counsel for the defendants insists that the error cannot be corrected, because it does not appear what the plaintiff expected to prove by the witness, and *Shellito* v. *Sampson*, 61 Iowa, 40, is relied on to support this objection. But we think it sufficiently appears from the question asked what was expected to be proved. The true rule, we think, is that, when it is apparent on the face of the question asked the witness what the evidence sought to be introduced is, and that it is material, this is sufficient. But when this is not apparent, then the party seeking to introduce the evidence is required to state what he expects to prove, and thus make its materiality appear."

In *Swanson* v. *Allen*, 108 Iowa, 419, one of the issues was whether a certain machine failed to do the work it was

warranted to do because of the unskilled handling of the same. At the trial, a witness who saw the machine in operation, was asked as to how it was doing the work. This question was excluded. The court said: "The ruling excluding this evidence sought to be elicited was erroneous. It tended directly to show that the outfit, if warranted, complied therewith, and that the trouble with the machine the year previous might have resulted from unskillful handling. No showing was required as to the character of the answers expected, as these were very evident from the questions. The appellant is entitled to the presumption that the evidence, if received, would have been favorable to the defence. Because of the errors pointed out, the judgment is reversed."

In *Gunn* v. *Ohio River R'd Co.* 36 W. Va. 177, the court said: "James Capehart, a witness for plaintiff, was a passenger on the up-bound train that morning, and was asked by plaintiff the question, 'Right at the time and while you were examining the children—right at the time of the accident— what, if anything, did you hear the conductor or engineer say?' The court refused this question. It was proper for plaintiff to indicate by the form of the question, or, when objection was made, in some other proper way, that he was seeking to elicit a part of the *res gestæ*. I think the question itself pointed with sufficient certainty to the supposed nature and competency of the expected reply."

In *James T. Hair Co.* v. *Manly*, 102 Ill. App. 570, the court said: "when, however, the materiality and relevancy of the question asked is apparent, it is not necessary, upon objection, to make an offer to prove." . . . "The question on appeal, in this regard, is, does the record show the materiality of the proffered evidence? If it does, the rejection of it may be urged as error." . . . "The question before the trial court, when objection is made, is, does the question call for testimony apparently relevant and material to the matter at issue." . . . "We are not considering the right of a court to require counsel to

state what they expect to prove, but the necessity for such statement, in order that error may be urged as to the sustaining of objections to relevant questions, concerning matters material to the issue."

In a syllabus written by the court in *Plattner Implement Co.* v. *International Harvester Co. of America,* 66 C. C. A. 438, the principle is stated that: "One who has induced a court to exclude competent evidence of his opponent upon the sole ground that no evidence in support of the latter's claim is admissible may not sustain that ruling on the inconsistent ground that his opponent did not go through the useless form of offering to prove all the facts requisite to sustain his claim."

I am of the opinion that the exclusion of said question by the justice presiding was error and am forced to the conclusion that the ruling amounts to reversible error. The letter in question, interpreted as an admission of liability on the part of the defendant, Shaw, constituted a very important factor in support of the plaintiff's case. If Mr. Shaw had been permitted to answer the question I cannot say that his answer would not have influenced the jury in finding their verdict.

The defendant excepted to the ruling of said justice excluding the following question with reference to said letter: "To whom did you refer in saying you were going into a fight?" The materiality of this question is not apparent. The statement in the letter: "I am going into a fight" was not claimed by the plaintiff to amount to an admission of liability on the part of Mr. Shaw; and it does not appear to me to admit of that construction. The plaintiff's claim of liability on the part of the defendants was in no measure based upon this statement in the letter and it was not a matter which the defendants were called upon to meet. However, it was contained in a letter which the plaintiff had introduced for the purpose of showing an admission of liability on the part of one of the defendants; the expression, "I am going into a fight," in its bearing on the business in

question, was without meaning to the jury though the defendants claim that its significance was well known to the plaintiff. It would not have been improper for said justice to have permitted an explanation of this expression; but the exclusion of such explanation was not error.

In my opinion the first exception of the defendants should be sustained; all other exceptions, overruled, and the case remitted to the Superior Court for a new trial.

JOHNSON, C. J., concurs in this opinion.

*Nathan W. Littlefield*, for plaintiff.
*Bassett & Raymond.* for defendant.
*R. W. Richmond*, of counsel.