238 A.2d 378.

MARY A. MANNING *et al. vs.* THE REDEVELOPMENT AGENCY OF NEWPORT, RHODE ISLAND.

FEBRUARY 5, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This is a petition for the assessment of damages for the taking by the defendant of an improved parcel of real estate for redevelopment purposes in connection with

the Long Wharf-Market Square Urban Renewal Project in the city of Newport. A justice of the superior court sitting without a jury assessed the damages at $36,500 together with interest according to law and judgment entered. The defendant appeals and attributes what it claims to be an excessive award to allegedly erroneous rulings by the trial justice excluding evidence relating to the sale of what, plaintiffs argue, was a comparable parcel of real estate.

It is sufficient to refer only to so much of the record as relates to the rulings in issue. It discloses that the real estate experts who appeared for each of the parties based their respective opinions of the condemned parcel's fair market value upon the sale prices of supposedly similar and comparable properties. For plaintiffs, one expert fixed that value at $39,400 and another at $38,300; for defendant, its sole expert valued it at $22,000. The latter, after describing certain comparable properties and the prices which each brought at sale, was asked about the "Standard Wholesale" property. He located it on the same street and in the same neighborhood as the property in litigation, fixed its sale date as about four months after the condemnation, and stated that he had relied in substantial part upon what it sold for in making his appraisal. He was then questioned generally about those factors which in his opinion made that property comparable, and in addition was asked to give its sale price. The plaintiffs objected, and after an extended colloquy between the court and counsel for both sides, the trial justice sustained, saying:

> "Well, I am prepared to rule. In my judgment you can't show, even though it is only a comparable which affects his opinion and not a comparable which directly affects value, you can't show it for two reasons: (1) it is substantially after the taking and, (2) it abuts the area taken and to get into the question of whether or not this property is comparable in value, it enhanced or minimized or cut down the value by the taking is a

side issue we can't go into, it would just take too long. I am going to sustain the objection and note your exception."

As we construe that ruling, the testimony sought to be elicited was excluded, not on the ground that the 112-day interval between the taking and the sale made it too remote as a matter of law, but because the sale of the Standard Wholesale property occurred *subsequent* to rather than *before* the taking, and for the additional reason that it would be too time-consuming to permit inquiry into whether the urban renewal project, which prompted the taking, had introduced a new valuation influence and had thereby materially affected the sale price. We reject any such hard and fast rule.

Our problem arises because in this state the best criterion of what constitutes just compensation for property taken by the exercise of the eminent domain power is its fair market value as evidenced by prices paid at or about the time of the taking at voluntary sales in the open market by willing buyers to willing sellers for parcels substantially similar and comparable to that taken. *Hall* v. *City of Providence,* 45 R. I. 167, 121 A. 66; *Atlantic Ref. Co.* v. *Director of Pub. Works,* 102 R. I. 696, 233 A.2d 423; *Assembly of God Church* v. *Vallone,* 89 R. I. 1, 150 A.2d 11; *L'Etoile* v. *Director of Pub. Works,* 89 R. I. 394, 153 A.2d 173. In reliance on that principle, we have in appropriate circumstances permitted evidence of pre-condemnation sales, but have not as yet decided if testimony of a post-condemnation sale occurring at or about the time of the taking is admissible. The question to be here resolved is whether there is any sound or logical reason which requires us to differentiate between the two.

While the authorities on this question are divided,[1] Orgel says:

> "* * * Generally speaking, the courts make no distinction between sales occurring prior to the taking and sales consummated after the date when title has vested in the condemner. They usually admit the latter type of evidence, sometimes qualifying their ruling by stating that the sale adduced must not be too remote in time or that there must be no drastic change in market conditions." 1 Orgel, Valuation Under Eminent Domain (2d ed.), §139, p. 591.

The exclusionary rule is sometimes justified on the ground that a subsequent sale of property located in the vicinity of the property taken is not really comparable because it will necessarily reflect either an enhancement of or a diminution in price which is attributable to the project or improvement for the construction of which the right to acquire by eminent domain was exercised. While, of course, there is no gainsaying that there may many times be a possibility, or even a probability, that the project which occasioned the taking resulted in the value of neighboring property being either inflated or deflated, neither the possibility nor the probability of such a change in price spells its inevitability. And so long as there exists a likelihood, even though in some cases remote, that there was no effect on price and that the two parcels are comparable, the opportunity to present evidence to establish these prerequisites should not be foreclosed by a rule of thumb prohibiting evidence of an after-condemnation sale. While the flexible approach may prolong a trial by introducing the collateral issue of whether property otherwise comparable has been enhanced or diminished in value, that is not too large

---

[1]Cases allowing such testimony include *Hance* v. *State Roads Comm'n*, 221 Md. 164, 156 A.2d 644; *United States* v. *63.04 Acres of Land*, 245 F.2d 140; *Zambarano* v. *Massachusetts Turnpike Authority*, 350 Mass. 485, 215 N.E.2d 652. Contra, *City of Chicago* v. *Blanton*, 15 Ill.2d 198, 154 N.E.2d 242; *Simpson* v. *Pennsylvania Turnpike Comm'n*, 384 Pa. 335, 121 A.2d 84.

a price to pay in order to insure that no person's property shall be taken for public use without his being justly compensated, and in order to protect the public against paying more than fair market value. *United States* v. *Featherston,* 325 F.2d 539. Moreover, consideration of the possible existence of an enhancement of or diminution in price is but one of the several factors which in every case will be germane to the determination of whether the two estates are sufficiently similar so that the sale price of one will be of assistance in arriving at the value of the other. 5 Nichols, Eminent Domain (3d ed.), 21.3[1], pp. 429-30.

In each case, therefore, the trial justice, rather than automatically barring evidence of a sale of otherwise comparable property merely because it occurred subsequently, should first decide if the price paid was so materially distorted as to deprive the property sold of its comparability. The resolution of that issue along with others will determine whether the other property was sufficiently similar as to make its sale price relevant in valuing the condemned parcel. These considerations will initially, of course, be within the discretion of the trial justice; and in the exercise of that discretion he may fix reasonable limits so as to prevent the trial from being unduly extended. *Hervey* v. *City of Providence,* 47 R. I. 378, 133 A. 618; *Jones* v. *Providence Redevelopment Agency,* 92 R. I. 285, 168 A.2d 156.

Our approach avoids a hard and fast exclusionary rule and gives to the trial justice a wide latitude within which to exercise his discretion in passing judgment on whether an after-sale price was in fact influenced by the condemnation. When he exercises that discretion in a non-jury case "* * * it would seem the better practice to admit the evidence and then to weigh it having due regard for the dan-

ger of artificial inflation [or deflation]."[2] *United States* v. *63.04 Acres of Land, supra,* at 144.

*Bruce* v. *State,* 93 R. I. 466, 176 A.2d 846, is consistent with the view we now express. In that case the property in litigation was condemned for highway purposes. Although we sustained a ruling excluding evidence of the post-condemnation price of an abutting parcel, we did so, not because of a general rule of exclusion, but because the particular facts of that case made it "self-evident" that the highway project had so measurably increased the value of the property sold as to deprive it of the comparability it might once have had to the condemned parcel.

The record in this case, however, neither makes self-evident nor even remotely suggests that the sale price of the Standard Wholesale property was materially affected by the urban renewal project. This becomes readily apparent from the discussion between court and counsel preliminary to the complained of ruling. There plaintiffs' counsel argues:

> "I think, Your Honor please, the magic question hasn't been asked yet, and that is: did condemnation affect the value of this property [Standard Wholesale property]"?

to which the court replied:

> "I don't know whether you can ask that magic question, whether you can go that far or not. That gets us into a side alley which will take days to try."

In the light of such a record it was error to shut defendant off without at least affording it an opportunity to es-

---

[2]Such a practice is sanctioned by rule 43(c) of the superior court's rules of civil procedure. Referring to the making of a specific offer of proof where evidence had been excluded in a jury case, the rule continues in reference to non-jury cases as follows: "In actions tried without a jury the same procedure may be followed, except that the court upon request, shall take and report the evidence in full, unless it clearly appears that the evidence is not admissible on any ground or that the witness is privileged."

tablish a foundation of comparability upon which to predicate testimony of sale price. Ordinarily, the exclusion of one sale would neither harm nor substantially prejudice the proponent, particularly where it was but one of the several sales testified to by the witness as a basis for his conclusion of fair market value. This case differs, however, because here the trial justice[3] categorically rejected the appraisal of defendant's expert on the ground that the witness had given "great weight" to the sale price of the Standard Wholesale property notwithstanding the exclusion of all evidence relating to that sale.

While normally to reject crucial opinion testimony on an unsound ground would constitute reversible error, plaintiffs argue that in the circumstances of this case defendant takes nothing by the error because of its neglect to protect the record by making an offer of proof. The rule which requires an offer of proof is, of course, well settled. It requires an examiner, after objection to a question propounded to a witness has been sustained, to advise the trial court what he expected the witness would have said if allowed to answer. *Burns* v. *Burns,* 102 R. I. 183, 229 A.2d 294, and cases cited therein. The purpose of the rule is not only to provide a means whereby a trial justice may become more fully advised of the substance as well as the value of the proposed evidence and thereby be induced to change his ruling, but

---

[3]His decision in this respect reads: "Concerning Mr. Dwyer's testimony, he arrived at an opinion of value of $22,000.00 many months ago. It is the Court's judgment that in arriving at that value at that time he gave great weight to a sale of real estate on Long Wharf which occurred several months after the condemnation, and abutted the land taken for redevelopment. Evidence of this sale was excluded. Despite this exclusion, the Court feels that Mr. Dwyer's opinion was largely influenced by this sale. Furthermore, it is apparent that Mr. Dwyer's examination of the subject property and of the Restivo property, the sale price of which partly influenced his judgment as to value, was cursory.

"Accordingly, the Court feels that it cannot accord great weight to Mr. Dwyer's testimony. * * *"

also to preserve the question for appeal and to place the reviewing court in a position where it can decide if the complaining party was prejudiced by reason of the exclusion of the answer.

While an offer of proof is sometimes defined as a statement of the purport of the expected evidence, proponents would do well to observe something more than the mere ritualistic formalism which the rule as stated may suggest is all that is demanded. Normally, and certainly if the stated purpose of providing the reviewing court with a clear picture of what was intended to be proved is to be realized, the offer should be reasonably specific, rather than general, *Ostmo* v. *Tennyson,* 70 N.D. 558, 296 N.W. 541; should include a statement of the facts to which the witness would testify, *Douillard* v. *Woodd,* 20 Cal.2d 665, 128 P.2d 6; should indicate the purpose and object of the proof offered, *Callan* v. *Peck,* 37 R. I. 227, 91 A. 34; and should establish that the evidence sought to be elicited is admissible. See *Garneau* v. *Garneau,* 63 R. I. 416, 428, 9 A.2d 15, 20, and *Williams* v. *Rhode Island Hospital Trust Co.,* 88 R. I. 23, 46, 143 A.2d 324, 337.

The defendant argues that profert was unnecessary in this case under the recognized exception which excuses it whenever the purport, the purpose, as well as the admissibility of the testimony which was sought to be elicited are all clearly apparent from the questions themselves or from the discussion preceding the ruling on admissibility. That is a sound principle. *Buckstaff* v. *Russell,* 151 U. S. 626, 14 S. Ct. 448, 38 L. Ed. 292; *Rice* v. *Sheldon,* 38 R. I. 161, 94 A. 711; Sweetland, J., dissenting at 166, 94 A. at 713; McCormick, Evidence, §51, p. 112; 5 Moore, ¶43.11, p. 1351. It is when that principle is applied to the facts of this case that the weaknesses of the argument appear.

Even on the assumption that it was obviously apparent that the witness, if allowed to answer, would have testified

that the two properties were so substantially similar in essential characteristics as to be technically classified as "comparable" and that the price paid for one would support and demonstrate the validity of the witness's appraisal that the other was fairly valued at $22,000, there is nothing in the record which lends support to the assumption that the witness would have testified that the prior taking for the urban renewal project did not in a material way affect the price paid for the Standard Wholesale property. It was the proponent's obligation to make an offer of proof specific enough so that it included within the statement of the purport of what the rejected testimony would have been that the sale price had not been materially affected by the taking. It failed to do so. In the absence of such an offer, and because it is not apparent from the record that the witness would have so testified, we are unable to say that the rulings complained of, even though erroneous, were prejudicial.

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Moore, Virgadamo, Boyle & Lynch, Francis J. Boyle,* for plaintiff.

*Macioci and Morrison, Joseph J. Macioci,* for defendant.