Strafford
No. 2011-023

## NEW HAMPSHIRE DEPARTMENT OF TRANSPORTATION

### v.

### PASQUALE FRANCHI

Argued: April 5, 2012
Opinion Issued: July 18, 2012

*Michael A. Delaney*, attorney general (*Mark P. Hodgdon*, senior assistant attorney general, and *Lynmarie C. Cusack*, assistant attorney general, on the brief, and *Ms. Cusack* orally), for the appellee, New Hampshire Department of Transportation.

*Cooper Cargill Chant, P.A.*, of North Conway (*Randall F. Cooper* on the brief and orally), for the appellant, Pasquale Franchi.

HICKS, J. The appellant in this eminent domain case, Pasquale Franchi (the landowner), appeals an order of the Superior Court (*Brown*, J.) denying his motion *in limine* to preclude expert testimony, as well as several other Superior Court (*Wageling*, J.) rulings at trial. We affirm.

The record supports the following facts. In the 1980s, the landowner purchased a 77.2 acre parcel of land in Conway, abutting the Cranmore Mountain ski area. On June 6, 2007, the State filed a declaration of taking with the New Hampshire Board of Tax and Land Appeals (BTLA) acquiring from the landowner's property approximately 6.38 acres, consisting of a strip of land, approximately 200 feet wide, running north and south through the center of the property.

Following a hearing, the BTLA awarded the landowner $1,000,000 as just compensation. *See* RSA 498-A:25 (2010). The State and the landowner both filed petitions in superior court for a reassessment of damages. *See* RSA 498-A:27 (2010). On December 13, 2010, a jury returned a verdict awarding $560,000 as just compensation. The landowner now appeals.

■ In an eminent domain proceeding, the preferred method for determining condemnation damages for a partial taking is the "before and after method, whereby the value of the remainder of the tract after the taking is deducted from the value of the whole tract before the taking." *Daly v. State*, 150 N.H. 277, 280 (2003) (quotation omitted). The owner is entitled to have the land appraised at the most profitable or advantageous use to which it

could be put on the day of the taking. *Id.* at 279. The landowner is compensated "not only [for] the fair market value of the property actually taken, but also . . . for the effect of the taking, if any, on the entire property, which is referred to as severance damages." *Id.* at 280 (quotation omitted). Use of the "before and after" method automatically accounts for severance damages. *Id.*

There is no dispute in this case that there was a taking of the landowner's property, and that he is entitled to compensation. Rather, the landowner contends that certain errors made both before trial and at trial require that we reverse and remand for a new trial to determine just compensation. Specifically, he argues that the trial court's rulings on a motion *in limine* and his request for jury instructions, as well as several evidentiary rulings, were erroneous.

Several of the challenged rulings arose out of the testimony of the State's expert, Duane Cowall, a certified commercial property appraiser. Cowall produced two separate appraisals assessing the value of the property as of the date of the taking, June 6, 2007. Both used the "comparative sales approach," which determines the fair market value of property "by comparing similar properties that have recently been sold with the property being appraised, identifying appropriate units of comparison, and making adjustments to the sale prices (or unit prices, as appropriate) of the comparable properties, based on relevant, market-derived elements of comparison." *Appeal of Pennichuck Water Works*, 160 N.H. 18, 38 (2010) (quotation omitted). Because this was a partial taking, Cowall determined the amount of damages by determining the difference between the fair market value of the property before the taking and the fair market value after the taking. *See Daly*, 150 N.H. at 280.

In his first appraisal, completed on June 5, 2008, Cowall determined that the landowner's property was worth $635,000 before the taking and $475,000 after the taking, resulting in $160,000 in damages. The State provided the landowner with a copy of the appraisal, and the landowner provided the State with his own appraisal, based upon "a very dense development," valuing damages at $3,070,000.

In light of the substantial disparity between the parties' appraisals, the State asked Cowall to prepare a second appraisal and assess the physical, legal, and economic viability of a higher density development. Cowall's second appraisal, prepared on July 17, 2009, concluded that the value of the landowner's property was $1,690,000 before the taking and $1,130,000 after the taking, resulting in $560,000 in damages. On July 9, 2010, Cowall included a feasibility report with the second appraisal. At trial, Cowall testified about the second appraisal and explained his conclusions from it.

He also testified that prior to completing the analysis for the second appraisal, he had completed an earlier appraisal and explained his reasons for changing it. He also explained to the jury his feasibility report regarding the second appraisal.

Prior to trial, the landowner moved *in limine* to exclude Cowall's testimony, arguing that pursuant to New Hampshire Rules of Evidence 401 and 702, the second appraisal was irrelevant and did not meet the required threshold level of reliability. The trial court denied the motion.

On appeal, the landowner argues that the trial court erred in denying his motion *in limine* to exclude Cowall's expert testimony related to the second appraisal because it did not rise to the threshold level of reliability required by New Hampshire Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See State v. Pelletier*, 149 N.H. 243, 252 (2003).

Expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," N.H. R. Ev. 702, so long as the testimony "rise[s] to a threshold level of reliability," *State v. Cressey*, 137 N.H. 402, 405 (1993). We review a trial court's determination of reliability for an unsustainable exercise of discretion. *Pelletier*, 149 N.H. at 251.

■ The landowner essentially disagrees with the substance and conclusions of Cowall's analysis. However, "[t]he trial court functions only as a gatekeeper, ensuring a methodology's reliability before permitting the fact-finder to determine the weight and credibility to be afforded an expert's testimony." *Goudreault v. Kleeman*, 158 N.H. 236, 247 (2009). The landowner also contends that the method employed was unreliable because Cowall did not appraise the property at its highest and best use, but rather gave the property "the benefit of the doubt." This, however, mischaracterizes Cowall's second appraisal and his resulting testimony. Cowall admitted that in his opinion, the highest and best use of the property, which was vacant, was to hold it for future development of single family detached condominiums. His first appraisal was based upon such a conclusion, and this was explained to the jury. However, he also explained that there was support for the higher density analysis contained within his second appraisal. Although the two appraisals were based upon different assumptions, there is nothing to suggest that the second appraisal, which the State used as its expert report, or Cowall's expert testimony was unreliable. The trial court, therefore, properly admitted this evidence.

The landowner similarly argues that Cowall's testimony regarding his second appraisal was inadmissible because it "was not being offered as the fair market value based upon a highest and best use, but instead for the

irrelevant purpose of giving the [landowner] the 'benefit of the doubt.'" However, merely because Cowall had some reservations about the assumptions underlying his analysis within that appraisal does not render his testimony irrelevant.

■ The landowner next argues that the trial court erred in admitting Cowall's feasibility analysis because it was neither reliable nor relevant. The landowner claims that the feasibility analysis "was a badly misprepared version of [a highly complex method of valuation] which skewed completely the actual feasibility of [a high density development] project." To support this argument, the landowner advances the same arguments he set forth regarding Cowall's second appraisal and expert testimony. For the same reasons explained above, we conclude that the trial court did not err in admitting the feasibility report. Moreover, even assuming, *arguendo*, it was error to admit the feasibility report, we find it to be harmless. The feasibility report analyzed the feasibility of a high density development and supported the lower density development used in Cowall's first appraisal. However, the jury accepted the second appraisal using the higher density analysis and, therefore, apparently did not rely upon the feasibility report. *Kessler v. Gleich*, 156 N.H. 488, 494 (2007) ("Where it appears that an error did not affect the outcome below . . . the judgment will not be disturbed." (quotation omitted)).

In his pre-trial motion *in limine*, the landowner requested the following pre-trial instruction:

> At the conclusion of the evidence in this case, it will be your duty to determine what damages the landowner suffered at the time of the taking on June 6, 2007. You will be hearing evidence with respect to the fair market value of the real estate on June 6, 2007, just before the taking occurred and just after the taking occurred. It is common knowledge, however, that [the] real estate market [has] sharply declined since 2007. You are cautioned that you must ignore what occurred after June 6, 2007. Whether property values went up or went down after a taking occurs *cannot* be considered in determining the award of just compensation.

(Emphasis added). The jury was selected on December 6, 2010, at which time the trial court gave the following preliminary instruction, which modified the instruction contained in the landowner's written request:

> [A]t the conclusion of the evidence in this case, it will be your duty to determine what damages the landowner suffered at the time of the taking on June 6, 2007. You'll be hearing evidence with respect to the fair market value of the real estate on June 6, 2007 just

before the taking occurred and just after the taking occurred. It is common knowledge, however, that the real estate market has sharply declined. Whether property values went up or down after the taking occurs *can* be considered in determining the award of just compensation *only* to the extent you find it of assistance in determining the property's fair market value on June 6, 2007.

(Emphasis added).

■ The landowner now argues that the trial court erred in modifying his requested pre-trial instruction. Although the property is to be valued as of the date of the taking, market data does not necessarily need to be excluded merely because it is data from sales occurring subsequent to the taking. *Cf. Manning v. Redevelopment Agency of Newport*, 238 A.2d 378, 380-82 (R.I. 1968) (rejecting "a hard and fast exclusionary rule" which would prohibit post-taking data for a more flexible approach giving the trial judge discretion to allow post-taking data). The landowner argues that the trial court's instruction "was in essence a *carte blanche* instruction to the jury to consider the abnormal collapse of the real estate market . . . without any limitation whether the same would have been reasonably given substantial weight in [the fictional] bargaining that [would] have taken place prior to [the date of the taking]." However, both appraisers properly valued the property as of the date of the taking and the trial court repeatedly instructed the jury to value the property as of the date of acquisition. Moreover, the pre-trial instruction did not give the jury any indication that it should base its fair market value determination on the post-taking data. Rather, to the contrary, it accurately instructed the jury to consider post-taking data *only* to the extent that it assisted the jury in valuing the property on the date of the taking, and we presume the jury followed these instructions. *State v. Smith*, 149 N.H. 693, 697 (2003). This was not an unsustainable exercise of discretion.

■ The landowner next argues that the trial court erred in declining to give his requested jury instruction addressing the burden of proof in its charge to the jury following the close of evidence. The purpose of jury instructions is to identify issues of material fact, and to inform the jury, in clear and intelligible language, of the appropriate standards of law by which to resolve such issues. *Rallis v. Demoulas Super Markets*, 159 N.H. 95, 98 (2009). The exact scope and wording of jury instructions are within the sound discretion of the trial judge. *Id.* Here, the trial court gave jury instructions on the burden of proof as well as the determination of fair market value. These instructions accurately described the law. Moreover, the trial court is not required to use the specific language requested by

either party, *see State v. McDonald*, 163 N.H. 115, 126 (2011), and the court's decision not to give the instruction requested by the landowner was not error.

Finally, the landowner argues that the trial court erred in excluding evidence of a historic development plan for his property. The plan, which was created in 1981, was prepared by a previous owner of the land, and "reflected . . . how the [landowner] was planning to develop [it.]" At trial, the landowner offered the 1981 plan in order to show that he had plans to develop the land in 2003-2007 that were "a continuation of [the] plan that dated back to 1981." The State requested a limiting instruction, and the court inquired about the relevance of the plan. The court concluded that without further information relating to the 1981 plan, its relevance was tenuous. The court excluded the evidence "under a Rule 403 analysis," but stated that the court would reconsider the ruling if the landowner laid "some sort of a different foundation."

New Hampshire Rule of Evidence 403 permits the trial court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The trial court has broad discretion to determine the admissibility of evidence, and we will not disturb its ruling absent an unsustainable exercise of discretion. *State v. Stowe*, 162 N.H. 464, 470 (2011).

Here, the trial court performed a Rule 403 analysis, noting that the relevance was tenuous, and thus, the probative value minimal, and determined that under Rule 403, the evidence would not be admitted. The landowner argues the court unsustainably exercised its discretion, asserting that the evidence was relevant and that it was not prejudicial. However, because evidence is relevant does not necessarily mean that it is admissible. *See* N.H. R. Ev. 403. Indeed, the very subject of Rule 403 is the exclusion of relevant evidence. Moreover, the prejudicial effect of evidence is not the only factor to be considered in a Rule 403 analysis. *Id.* The trial court may also consider confusion of the issues, misleading the jury, delay, waste of time, or needless presentation of cumulative evidence. *Id.* The court's exclusion of the evidence in this case was not an unsustainable exercise of discretion because it was not clearly untenable or unreasonable to the prejudice of the landowner's case. *Stowe*, 162 N.H. at 470.

The trial court made no error, and we, accordingly, affirm.

*Affirmed.*

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.