STATE *v.* FELIX GALLOGLY:

JULY 7, 1926.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

(1)  *Trial.  Charge.*

Where there has been no attempt to correct or supplement the record as originally transcribed, while from the reading of the transcript the court may not be able to get a perfect picture of the charge, it must consider the record as it is before it.

(2)  *Trial.  Charge.*

While it is the right of the court in the exercise of its discretion to state to the jury not only the issues but also the testimony and other evidence bearing upon the issues, it should always be exceedingly careful not to deprive either party of a fair trial by either consciously or unconsciously conveying to the jury its impression as to the proper weight to be given to any of the testimony.

CRIMINAL COMPLAINT. Heard on exceptions of defendant and overruled.

RATHBUN, J. This is a criminal complaint charging that the defendant violated the provisions of Chapter 127, G. L. 1923, by unlawfully possessing intoxicating liquors which were fit for beverage purposes. The trial in the Superior Court resulted in a verdict of guilty. The case is before us on the defendant's exceptions to certain instructions of the trial justice to the jury.

On April 28, 1925, the defendant conducted a near-beer saloon at 499-501 Eddy street in the city of Providence. On said date Lieutenant Steeves, together with other members of the local police force, entered the defendant's place of business and, by authority of a search warrant, searched for intoxicating liquors. The search was unsuccessful and,

the officers went away.  One of the officers, however, at about the same time entered the cellar of the building at 505 Eddy street and found intoxicating liquors stored there. The officer testified that while he was secreted in the cellar waiting to see whether anyone would come to get any of the liquors the defendant entered the cellar.

The State contends that the defendant's mission to the cellar was to get a supply of liquors for his saloon.  The defendant denied having possession of said liquors and also denied that he knew, before entering the cellar, that liquors were stored there.  The defendant testified that he was attracted to the cellar by hearing some person there rapping on a partition and shouting to attract attention.

The defendant contends that certain language of the charge together with a gesture made by the trial justice tended to convey to the jury the impression that said justice believed that the witnesses for the State were telling the truth and that the defendant was not.  The language excepted to was as follows:  "And now comes the question for you first to consider, and it is to my mind very material. Did that officer knock or make a commotion?  He was there, if the police story is true—and it is not contradicted as to that,—to wait for someone who might be interested in that liquor.  Now do you believe that in that position he raised some commotion so that anyone might come who might hear him, or was he there to wait till someone did come and did he so wait?  If it is the truth that he was there to wait, if you believe that he was there to wait, can you harmonize that with the idea of his knocking or calling so that people might know there was someone down there?  Or rather was it for him to wait for someone to come not knowing that he was there?

"The officer says Felix Gallogly came down and with some implement, wire or something, he opened this door and then at that time was when the officer detained him.  Now what is the truth of that?  If Felix came down, didn't come in response to some alarm or something, what was he down

there for? Why was he in where those liquors were? These are questions which you have to decide, which you have to determine. He says he had no interest in them, they were not his; then why was he there?"

The defendant's brief contains the statement that said justice,—after using the language: "He says he has no interest in them, they were not his; then why was he there?" —"waved his hand, in a manner that the defendant considers was prejudicial to his rights in that it conveyed to the jury an impression that the officer's story was true and that the liquors were possessed by the defendant" and concluded his question as follows: "unless, as he says, there was some noise or commotion, someone knocking or pounding?"

We can readily understand that a question such as the one above quoted might be so asked that the inflection of the voice together with a gesture might clearly indicate that it was the speaker's opinion that there could be but one answer to the question and that the answer was obvious. However, the transcript of the charge, as might be expected, contains no mention of any wave of the hand and there has been no attempt to correct or supplement the record as originally transcribed by the court stenographer. While from a reading of the typewritten transcript we may not be able to get a perfect picture of that part of the charge, we must consider the record as it is brought to us.

In the course of the charge the trial justice several times told the jury that he expressed no opinion as to who was telling the truth and that such questions were for the jury and not for the court to decide. The charge contains statements as follows: ". . . in commenting on the testimony I wish you gentlemen to remember that I offer no suggestion as to the truth or falsity of any witness' testimony. They can't all be telling the truth, some of them must be mistaken and you gentlemen must determine, using your judgment, your experience, which is the truth in any particular case submitted to you. I shall merely discuss the testimony and you are to determine the truth. . . .

But you see, the really important thing is as to why Felix Gallogly went there in the beginning. If there is any evidence that in any manner substantiates his case or the State's case in relation to the reason he went there, you should consider it. Use your heads and your common sense in weighing it. . . . It is not under our practice allowed, and I don't know that it should be under any practise, for a court to say 'I believe this witness and that one I do not'. In a spirit of fair-play it is for the jury to say. My opinion as to this, that or the other witness and as to whether he is telling the truth is of no value to you and it would be error to tell it to you. The jury must form their own opinion from what they get right here on this witness stand in a criminal case—you see the witnesses, you hear them and you have to judge from what you see and hear without interference from the court or opinion one way or the other. So I am going to close my charge as I started it, asking you to decide this case on the law as I have given it to you and on the facts as you find them and in no other way."

In considering the above excerpts from the charge it is pertinent to say if a trial justice has once given the jury a clear impression that he believes or disbelieves the testimony of a witness such an impression is not eradicated by instructions, formal or otherwise, that it is the sole province of the jury to decide which witnesses are telling the truth. Therefore, while it is the right and often the duty of the trial justice, in the exercise of his discretion, to state to the jury (2) not only the issues but also the testimony and other evidence bearing upon the issues—see § 4640, G. L. 1923—he should always be exceedingly careful not to deprive either party of a fair trial by either consciously or unconsciously conveying to the jury his impression as to the proper weight to be given to any of the testimony. In *State* v. *Amaral*, 47 R. I. 245, this court in commenting upon the duty of a trial justice said: "He should not be led to express by language, or the tones of his voice, or in any other manner his opinion as to the credibility of the witness or the weight which should be given to his testimony."

After a careful consideration of the charge we are unable to say from the record which has been brought to us that the language complained of was unfair and prejudicial to the defendant.

All of the defendant's exceptions are overruled and the case is remitted to the Superior Court for sentence.

*Charles P. Sisson*, Attorney General, *Harold E. Staples*, Assistant Attorney General, for State.

*John P. Hartigan*, for defendant.