EDWARD GARNEAU *et al., p. a. vs.* AZARIE GARNEAU *et al.*

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

NOVEMBER 9, 1939.

Moss, J.   The complainants, Edward, Marcel, Ernest and Robert Garneau, who are the four children of Edward Garneau, deceased, and all minors, brought this suit in equity, by their mother, Camilia Garneau, as next friend, against Azarie Garneau, their uncle, and Rosealma Pelo-

quin, their father's sister. They seek to enforce their rights and interests under the second of two trust instruments which were executed by their paternal grandmother, Amanda Garneau, widow, and under which, they assert, the first respondent is trustee for the benefit of the complainants of certain property, consisting of a note and a real estate mortgage securing it, belonging to her at the time of the execution of the first instrument, and a certain savings bank account created by her and described in the second instrument.

In their prayer for relief the complainants seek an accounting from the first respondent as such trustee and his removal for the alleged violation by him of his duties as such; and from the second respondent they seek restitution to the trust estate of a sum of money which constituted nearly all of the above-mentioned savings bank account, and which came into her possession by reason of an alleged violation by Amanda and Azarie Garneau of the trust set forth in the second trust instrument.

At the hearing in the superior court on bill, answer, replication and evidence there was no question as to the execution and validity of the two trust instruments, which were introduced as exhibits. Nor did the respondents seriously deny that after the second was executed there was thereunder a trust, for the benefit of the complainants, of the bank account, as well as of the note and mortgage. But the vital contentions seriously made by them were two.

The first of these was that under the second of these instruments, as actually drawn and executed, Amanda Garneau had the power to revoke the trust as to the bank account, which stood on the books of the bank as belonging to "Azarie Garneau or Amanda Garneau trustee for Marcel, Ernest, Robert and Edouard Garneau", the complainants, and nearly all of which was on March 28, 1938,

paid out by the bank to the respondent Rosealma Peloquin on an order directing payment to her or her order and signed as follows:

> "Azarie Garneau
> Amanda Garneau
> Trustee for
> Marcel, Ernest, Robert & Edouard Garneau"

The second of these vital contentions was whether, although no such power of revocation was reserved, expressly or by implication, to Amanda Garneau by that instrument as drawn and executed, she was equitably entitled to exercise such power, because it was omitted from that instrument by mistake of the parties thereto. No such defense was set forth in the respondents' answer, and they introduced no evidence in support of it.

However, in order to sustain this vital contention, their counsel made a very long offer of testimony, the statement of which in the transcript of testimony covered ten pages. The justice before whom the cause was being heard rejected this offer on the grounds that the two instruments clearly created a trust in the mortgage and bank account, for the benefit of the complainants; that these two instruments were not "explained or illuminated or made more clear in any way by the testimony sought to be introduced"; and that it was "in direct contradiction of the ordinary legal sense of these two documents."

He then decided that the complainants are entitled to the fund that had been on deposit in the savings bank. A final decree was entered that by the two instruments the entire beneficial interest in the note and mortgage and the bank account was vested irrevocably in the complainants; that the respondent Azarie Garneau be removed as trustee and Camilia Garneau be appointed trustee in his place; that he transfer to her the mortgage and the

note secured thereby; that he be required to account as trustee; and that the respondent Rosealma Peloquin restore to the trust fund the sum of $3837 received by her from the trust fund, with all accumulations and benefits therefrom.

The cause is now before us on the respondents' appeal from this decree, their reasons of appeal being, in substance, that it is contrary to the law; that it is against the evidence and the weight thereof; and that evidence offered by them in defense was erroneously rejected by the justice before whom the cause was heard.

The first of the two instruments was executed and acknowledged by Amanda Garneau on January 15, 1935, but was not filed for record until May 5, 1938, the day of her death, and meantime apparently remained in her possession, though the transferee, Azarie Garneau, knew about it. In it the mortgage and note were assigned and transferred to him as "trustee nevertheless for Edward, Ernest, Robert, and Marcel Garneau, minors, and sons of my deceased son, Edward Garneau. . ."; and by the *habendum* clause he was to have and to hold the mortgage and note "to *them*, the said Azarie Garneau, trustee" for these same minors, "*their* heirs, executors, administrators and assigns, to *their* own use, benefit and behoof forever. . . ." (italics ours)

The second of the two instruments, which was entitled "Trust Agreement", was executed in duplicate on July 23, 1937 by both Amanda Garneau and Azarie Garneau, who were described as the parties of the first and second parts respectively. In it they recited the above transfer by her to him, by the former instrument, of the mortgage and note as being in trust for the above-named minors; that that deed of transfer contained "no provisions defining the purposes of the trust and the powers and duties of the

*trustee* thereunder"; that it appeared to the parties both desirable and necessary that there should be "a definite and clear expression of said purposes, powers and duties"; and that there was then on deposit in a certain bank, in the names of both parties "as *trustees* for the above named minor children, certain funds, which, together with all additions thereto and accretions thereof, the party of the first part desires to add to the trust intended to be created by the transfer deed above mentioned and to be more clearly defined in and by the present instrument." (Italics ours)

After these recitals, the main body of the agreement followed with eleven numbered paragraphs. By the first the above transfer of the mortgage and note was reaffirmed, "subject however, to the powers, duties and purposes herein expressed." The next five were as follows:

"2. The funds now on deposit in the names of, and payable to, the parties hereto or their survivor, as trustees for the above named minor children of Edward Garneau, deceased, together with all additions thereto and accretions thereof, are hereby made a part of the trust herein created, and are hereby assigned and transferred to the said party of the second part, subject also to the powers, duties, and purposes herein expressed.

"3. During the life of the party of the first part or so long as she is able mentally and physically to manage her own affairs, the party of the second part shall have the power and it shall be his duty, to collect any and all payments, whether of interest or on the principal, which may from time to time become due on said mortgage note, give his receipt or receipts therefor, and remit the moneys so collected or received by him to the party of the first part. Said party of the first part shall not be accountable to either the party of the second part or to the beneficiaries of the trust for the disposition of said moneys.

"4. Upon the death of the party of the first part or in the event that said party of the first part should become physically or mentally unable to manage her own affairs, the party of the second part shall become the sole trustee, and assume the sole and exclusive management of the trust herein created.

"5. Upon his assumption, as aforesaid, of the management of said trust, the party of the second part, in addition to the powers theretofore exercised by him hereunder, shall hold and manage all the funds of said trust for the use and benefit of the above named minor children of said Edward Garneau, deceased, or of their survivors or survivor, in the manner hereinafter expressed.

"6. On and after the assumption by the party of the second part of the sole and exclusive management of said trust, as aforesaid, all moneys collected by him on said mortgage note or which may otherwise come into his hands under or by virtue of said trust, shall during the life of said trust be deposited, kept, and held in his name as trustee for said minor children, in some savings bank or trust company of his own selection."

The next four paragraphs set forth the details of the trusts under which, after the death of Amanda Garneau, Azarie Garneau should use the trust *res* for the benefit of the minor children and their issue; the time and manner of the termination of the trust; the time and manner of accounting by him as trustee; and the amount and manner of payment of compensation to him for his services as such trustee. The last paragraph was as follows: "Said party of the second part hereby assumes the duties or trust hereby imposed, and covenants and agrees to faithfully and honestly discharge the same."

It is obvious that this agreement was intended to take effect at once and that it did so, and that *both* of the parties to it were to be trustees thereunder, Amanda Garneau being the principal trustee, so long as she lived and

remained able to manage her own affairs, and therefore naturally holding the bankbook and quite likely the mortgage and mortgage note. But it is obvious also that Azarie Garneau was meantime to be a trustee also, with the limited duty of collecting payments, apparently of interest, on the mortgage note and turning them over to her to use as she pleased; and that thereafter he was to be sole trustee.

It is clear to us that from the date of the execution of the trust agreement the trust for the benefit of the minor children mentioned was fully binding on the trustees and on the property covered by the agreement; and that it gave these minor children the full equitable title thereto, except that, while she remained alive and competent, the right to do as she pleased with any payments made on the mortgage note and turned over to her was expressly reserved to her, without accountability by her to these children or to the other trustee. The very fact that this right was expressly reserved to her is a strong indication that she intended that *otherwise* the full equitable interest in all the property covered by the agreement be irrevocably vested in the minors from the time of the execution of the agreement, except that under certain contingencies their issue or the next of kin of the survivor of them might receive some of the trust estate.

As an indication to the contrary, the respondents rely strongly on the fact that the settlor kept in her own possession the note, mortgage and transfer and also the bankbook. But it appears to us that by the terms of the trust agreement nearly all the trust powers and duties were vested in the settlor during her life and competency; and that she would naturally, during that period, keep in her possession the evidences of title to the trust *res*, so that she could make any necessary or proper changes of investment. Under the circumstances Azarie Garneau would

not naturally have taken over the evidences of title to the trust *res* until he became the sole trustee. Therefore, in our opinion, the mere retention by her of such evidences of title gives little, if any, support to the contention of the respondents that she retained the right and power to divert any of the trust *res* from the purposes of the trust, without substituting other property of equal value.

It is clear that the agreement did not contain any *express* reservation to Amanda Garneau of a right of revocation as to all or any of the property covered by the agreement; and in the agreement, when read in the light of the proven circumstances of its execution and the other proven facts of the case, we do not find any implied reservation of such a power.

The general rule is well settled in this state and elsewhere that the creator of a trust created by a written instrument, even though made without consideration, has no power to revoke or modify it, unless he has, by the terms of that instrument, or by clear implication therefrom, reserved such a power. *Stone* v. *King*, 7 R. I. 358; *Atkinson, Petitioner*, 16 R. I. 413, 16 A. 712; *Gobeille* v. *Allison*, 30 R. I. 525, 76 A. 354; Restatement, Trusts, §330.

In *Stone* v. *King, supra*, this court says at page 365: "On the other hand, if the legal conveyance be effectually made, the court will protect all equitable interests, and enforce all equitable rights and duties under it as promptly and completely, though made without, as if made with, consideration. The party who makes a voluntary deed, whether of real or personal estate, without reserving a power to alter or revoke it, has no right to disturb it; and as against himself it is valid and binding, both in equity and at law."

In *Atkinson, Petitioner, supra*, a father made a deposit in a savings bank in the name of a child of his, with him-

self named as trustee, told the child that the latter would have the money on the father's death, and retained the bankbook itself. Later the father withdrew from the bank this deposit and interest thereon, and invested in his individual name the money thus withdrawn. This court held that the child had a completely constituted trust in his favor and was entitled to the deposit with the interest from both the original and subsequent investment; and that the father, having completely constituted the trust, could not revoke it.

In *Gobeille* v. *Allison, supra,* a Mrs. Barth made a deposit in a bank to the credit of a daughter of hers in this form: "Mabel B. Gobeille, Emma Barth, Trustee", and retained the book for a time. Later she told the daughter about the deposit and delivered the book to her. The daughter returned the book to the mother, who retained it; and then, later on, when the daughter was evidently about to die, leaving a husband, who was sole legatee under her will, the mother drew out all the money and disposed of it for the benefit of another daughter. It was held that she had no power to do so, this court saying, at page 258: "When the trust is completely constituted, the power in the settlor to revoke ceases."

A little further on, this court says: "What induced Mrs. Barth to act as she did we do not know; but it is not unlikely that, failing to understand the full legal effect of this transaction, and wishing to have this fund pass to her other daughter, rather than to the husband of the daughter who was then dying, she withdrew the money from the bank and attempted to create a new trust in favor of her other daughter. This she could not be permitted to do."

It is contended, however, in behalf of the respondents in the instant case, that Amanda Garneau had the power

and right to divert practically all the bank account from the trust because she intended to reserve a power of revocation in the trust agreement but it was omitted therefrom by mistake. In support of the contention that if such an omission by mistake is found to have occurred, the trust instrument may be revoked by the settlor, Restatement, Trusts, §332 (1), and *Aylsworth* v. *Whitcomb,* 12 R. I. 298, are cited.

The passage cited from the restatement is as follows: "If a trust is created by a written instrument and the settlor intended to reserve a power of revocation but by mistake omitted to insert in the instrument a provision reserving such a power, he can have the instrument reformed and can revoke the trust."

But counsel for the respondents goes further than this and contends that the rule is laid down in *Aylsworth* v. *Whitcomb, supra,* that the absence of a clause of revocation in a voluntary settlement by deed of trust without consideration is to be regarded as *"prima facie* evidence of mistake" or as "a circumstance to be taken into account." It is true that in that case this court says that "according to the weight of modern authority" such a rule applies, where a deliberate intent to make the settlement irrevocable does not appear.

The same counsel cites also, as supporting such a rule, *Neisler* v. *Pearsall,* 22 R. I. 367, 48 A. 8, where *Aylsworth* v. *Whitcomb, supra,* is discussed in the opinion. But we are not at all sure, after a careful reading of that opinion, that this court approved the rule. It certainly did not apply it in that case, in which the instrument involved contained a statement that it was irrevocable.

Counsel for the complainants in the instant case contend that the rule stated in the *Aylsworth* case was little if any more than a *dictum* in that case and is entitled to little or

no weight, because the case was decided on a different ground; and that at any rate the rule is not in force in this state at this time.

There also seems to be considerable doubt whether the rule has ever been applied in this state or elsewhere, except in a case where the primary and main purpose of the trust was to benefit the settlor, who afterwards exercised an asserted right to revoke it.

But we do not find it necessary to decide whether or not the rule applies in the instant case, because in our judgment the utmost effect of it would be that absence of a clause of revocation would be *"prima facie* evidence of mistake" or "a circumstance to be taken into account"; and after treating it as such evidence and giving it all the weight to which it is in our judgment entitled, we are of the opinion, based upon all the evidence in the cause, that Amanda Garneau did not intend to reserve a right to revoke the trust.

Of the considerations that have led us to that conclusion, an important one is certain language contained in the agreement and to which we have already called attention, whereby she expressly reserved to herself the right, while she remained alive and competent, to do as she pleased with all sums of money which would be paid upon the mortgage that was covered by the trust agreement and would be received by her, and to do so without accountability by her, either to Azarie Garneau, the other trustee, or to the beneficiaries of the trust. This, to our minds, clearly and strongly indicates that otherwise than as thus expressly reserved, she intended, for the benefit of the children of her deceased son, to divest herself, irrevocably, of all equitable interest in the trust property.

We therefore are of the opinion that the finding by the justice of the superior court that the complainants are en-

titled to the fund that had been on deposit in the savings bank was supported by the evidence before him and by the law. We are also of the opinion that, except as to the right which, as above stated, Amanda Garneau expressly reserved to herself to do as she pleased with certain payments on the mortgage, and except as to certain possible future interests, with which we are not now concerned, the finding in the decree that the entire beneficial interest in the note and mortgage and in the bank account was vested irrevocably in the complainants was supported by the evidence before him and by the law.

But it is contended in behalf of the respondents that if the evidence which was set forth in their counsel's offer of proof had not been wrongly excluded by the justice of the superior court, but had been introduced, it would have been clearly shown that a power of revocation was intended by Amanda Garneau to be in the trust agreement but was omitted by mistake.

All this alleged evidence, on which the respondents' counsel relies, was, as above stated, included in one very long offer of proof, which covered a great many alleged facts. Much of this offered evidence was clearly inadmissible, as, for instance, evidence as to what disposition, not by way of trusts, the settlor had made of other property belonging to her; evidence as to what she had instructed the respondent Rosealma Peloquin to do with the money that was drawn out of the savings bank account involved in this cause and was turned over to her by Amanda and Azarie Garneau on March 28, 1938; and evidence as to what Amanda Garneau told the manager of the bank in connection with that withdrawal.

A large part of the evidence included in the offer being clearly inadmissible and no separate offer being made and rejected of any evidence that was admissible, we cannot say that the justice wrongly rejected the offer. He was under

no duty to pick out from the mass of offered evidence, covering ten pages in the transcript, any items of evidence that were admissible, if any there were, and to admit those items. As stated in 1 Wigmore on Evidence, 172, §17: "If *several facts* are included in the offer, some admissible and others inadmissible, then the whole (if properly objected to) is inadmissible; in other words, it is for the proponent to sever the good and the bad parts." Even if this rule might be too strict, where proof of only a few related facts is offered, it should, in our judgment, be applied to such a single offer of proof of a mass of largely unrelated facts as was made in this cause, without any request for a separate ruling on the admissibility of any class or kind of the offered evidence.

The respondent Rosealma Peloquin did not allege that, as to any of the money paid to her out of the savings account, she is in the position of a *bona fide* purchaser for valuable consideration without notice; nor would the evidence support such a defense. The uncontradicted evidence was that she presented to the bank an order on which that money was paid to her and which was signed by Azarie Garneau and Amanda Garneau, "Trustee for Marcel, Ernest, Robert and Edouard Garneau."

For the above reasons we are of the opinion that the decision of the justice of the superior court and the provisions, in the decree appealed from, that the complainants are entitled to the full amount of the fund that had been on deposit in the savings bank at the time of the execution of the trust agreement, together with all accretions thereto, and are entitled to the note and mortgage, should be affirmed. As to the orders in the decree that the respondent Azarie Garneau be removed as trustee and Camilia Garneau be appointed in his place and that he account to the complainants for his administration of the trust, these pertain to matters that are particularly within the jurisdiction of the superior court to supervise the administration of trust

estates; and we see no sufficient reason for reversing or modifying them.

The order that the respondent Rosealma Peloquin restore to the trust fund the sum of $3837 received by her from the trust fund, with all accumulations and benefits therefrom, follows necessarily from the first finding and order, since, as above stated, she is not entitled herein to the rights of a *bona fide* purchaser for value without notice of the trust.

The appeal is denied; the decree appealed from is affirmed and the cause is remanded to the superior court for further proceedings.

*Kennedy & Greene,* for complainants.

*Eugene L. Jalbert,* for respondents.