394 A.2d 690.

ANTHONY M. PALAZZOLO *et al. vs.* ROBERT J. RAHILL, *Director of Public Works.*

NOVEMBER 21, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

Doris, J.   This is a petition under the provisions of G.L. 1956 (1977 Reenactment) ch. 6 of tit. 37 and G.L. 1956 (1968 Reenactment) ch. 10 of tit. 24 for an assessment of damages resulting from a taking for highway and freeway purposes of a portion of the petitioners' land by the respondent, and for severance damages to the remainder of said land. The case

was heard before a justice of the Superior Court sitting with a jury. The only issue was the assessment of damages. The jury awarded the petitioners the sum of $43,000 as compensation for the land taken and severance damages to the remainder of said land. The case is before us on the petitioners' appeal from the judgment entered pursuant to said award.

On May 8, 1970, the statement of taking and the accompanying condemnation plat was filed and recorded by respondent in the office of the Town Clerk of Westerly.

The petitioners at the time of the taking were the owners of certain land located on the Westerly-Bradford Road, so-called, in the town of Westerly. At that location they operated a business called Polly's Auto Sales-Auto Salvage and engaged in the sale of used automobiles, automobile salvage parts and junk. The respondent appropriated 2.1 acres of petitioners' land including 680 feet of frontage for highway purposes. Included in the taking were four buildings and the entry road to the property as well as a portion of a long screening fence surrounding the junkyard.

The petitioners raise three errors on appeal. First, they contend that the trial court improperly refused to allow petitioners' witness, J. Clifden O'Reilly Jr., a realtor and appraiser, to testify as an expert concerning the cost of replacing a portion of fence lost in the taking. Prior testimony had established that aesthetic fencing was required to shield the junkyard. Mr. O'Reilly had been accepted by the court as an expert in real estate appraisal and had testified at length concerning petitioners' property loss. The trial justice refused, however, to allow Mr. O'Reilly to testify concerning what the cost of replacing the lost fence would be.

In an attempt to preserve their appellate rights, petitioners made the following offer of proof:

"MR. SURDUT: We offer to show that Mr. O'Reilly would testify that that figure would be for the cost of the fence, approximately $11,000.00, and this would be for a Cyclone-type screen fence, and further, a wooden

fence would be even more expensive, and this would be a sensible economical and satisfactory fence for the purpose and that that would be the price of the fence at that time on the date of taking.

"THE COURT: Now, I knew Mr. O'Reilly's daddy, he was an outstanding lawyer and a good friend of mine, and I've known Mr. O'Reilly since he went to Fort Knox to be a shavetail with the Artillery out there in 1953, but I don't recognize him as a qualified fence builder who can give an opinion as to the cost of putting up a fence; it would be hearsay."

The petitioners content that their offer provides us with a sufficient basis for review of the trial court's ruling. We disagree. The petitioners' offer of proof contains those facts to which the witness would have testified had he been accepted by the court as an expert witness. It omits, however, facts establishing the witness's *qualifications* to testify as a fence expert — the threshold question and the question addressed by the trial court. Accordingly, we need not address the propriety of the trial justice's reference to his personal knowledge in assessing Mr. O'Reilly's qualifications. For under the posture of the record before us, if this were error it was harmless error.

An offer of proof is a litigant's tool for getting an answer to a question before the court after an objection to the question has been sustained. Trial counsel is permitted to state for the record what he or she believes the witness would have answered had the question been allowed. In *Manning* v. *Redevelopment Agency,* 103 R.I. 371, 238 A.2d 378 (1968), we outlined the nature of an offer of proof:

"While an offer of proof is sometimes defined as a statement of the purport of the expected evidence, proponents would do well to observe something more than the mere ritualistic formalism which the rule as stated may suggest is all that is demanded. Normally, and certainly if the stated purpose of providing the

reviewing court with a clear picture of what was intended to be proved is to be realized, the offer should be reasonably specific, rather than general, *Ostmo* v. *Tennyson*, 70 N.D. 558, 296 N.W. 541; should include a statement of the facts to which the witness would testify, *Douillard* v. *Woodd*, 20 Cal.2d 665, 128 P.2d 6; should indicate the purpose and object of the proof offered, *Callan* v. *Peck*, 37 R.I. 227, 91 A. 34; and should establish that the evidence sought to be elicited is admissible. *See Garneau* v. *Garneau*, 63 R.I. 416, 428, 9 A.2d 15, 20, and *Williams* v. *Rhode Island Hospital Trust Co.*, 88 R.I. 23, 46, 143 A.2d 324, 337." *Id.* at 379, 238 A.2d at 382-83.

The record before us in the instant case is devoid of facts showing Mr. O'Reilly's qualifications to testify about fence costs. The offer of proof states Mr. O'Reilly's opinion about the cost of the fence but is silent concerning his qualifications to give that testimony — the *sine qua non* for the admissibility of this evidence.

We cannot speculate about the witness's qualifications in this area. Expertise in evaluating fence replacement costs is not necessarily contained in real estate appraisal qualifications. *See Pittsburgh Terminal Warehouse & Transfer Co.* v. *City of Pittsburgh*, 330 Pa. 72, 198 A. 632 (1938).

A trial court has wide discretion in ruling on the qualifications of a witness to testify as an expert. *Morgan* v. *Washington Trust Co.*, 105 R.I. 13, 249 A.2d 48 (1969); *Redding* v. *Picard Motor Sales, Inc.*, 102 R.I. 239, 229 A.2d 762 (1967). Since the record discloses no abuse in the exercise of this discretion, we will not disturb the trial court's ruling.

The second issue that petitioners press on appeal concerns the court's ruling that petitioners were not entitled to damages for alleged loss of access to their remaining land. The court determined that since the condemned land abutting the residue of petitioners' land was for highway use — as distinguished from freeway use — petitioners were not

deprived of access by the taking.[1] We have held that highway abutters have access to and from state highways. *Honig* v. *Director of Public Works*, 106 R.I. 199, 258 A.2d 73 (1969). Whereas freeway abutters, on the other hand, lack this right. *Id.; cf. Narciso* v. *State*, 114 R.I. 53, 328 A.2d 107 (1974), *noted in* 10 Suffolk U.L. Rev. 938 (1976). *See generally* Stoebuck, *The Property Right of Access Versus the Power of Eminent Domain*, 47 Tex. L. Rev. 733 (1969).

It is manifest that a substantial denial of access is a compensable taking under both the United States and Rhode Island Constitutions.[2] The petitioners argue that since the condemnation documents do not expressly guarantee access, they must be strictly construed as denying access. In support of this contention they argue that the case *sub judice* is controlled by our opinion in *Sullivan* v. *Marcello*, 100 R.I. 241, 214 A.2d 181 (1965). In *Sullivan* we affirmed the trial court's finding that the intended use for land taken in that case was for freeway use. We stated that a court must look at the four corners of the documents of taking to determine whether access has been appropriated. *Id.* at 251, 214 A.2d at 186. *See Nasco, Inc.* v. *Director of Public Works*, 116 R.I. 712, 360 A.2d 871 (1976).

In the case at bar, however, the written instrument of taking, describing what was taken, was not put into evidence and is not before us.[3] The trial justice made his decision based on the one statutory condemnation document before him,

---

[1]The plat, petitioners' exhibit 3, reveals that the condemned property was divided into two parts. The legend on the plat describes the boundary abutting petitioners' property as a highway line. It describes the parallel boundary line, farthest from petitioners' remaining land, as a freeway line.

[2]U.S. Const. amend. V; R.I. Const. art. I, §16.

[3]There were seven exhibits: three photographs, two plans and two maps. Moreover, nowhere in the transcript is such information read into the record.

The acquisition statute, G.L. 1956 (1977 Reenactment) §37-6-14, sets forth the documents that the acquiring authority must file:

> "Filing of condemnation papers — Vesting of title. — Within six (6) months after the state properties committee has authorized condemnation

the plat of the land. The document indicated — and the trial justice so held — that access as preserved because the taken land directly adjacent to petioners' remaining property was for a highway, not a freeway. If the condemnation documents that petitioners refer to in their brief do not assure them of access, then they have the burden of proving this as an element of their damages. *Id.* at 721, 360 A.2d at 876. Such proof requires the evidentiary submission of the documents relied upon for perusal by the trial court. Absent such proof, we cannot assume that the taking documents omit a guarantee of access.

The petitioners' final argument alleges error in the trial justice's instruction to the jury. They argue that certain comments by the trial justice impugned the credibility of their expert witness. The pertinent language of the instruction reads:

> "You might want to consider, as I sometimes have to, how two competent, experienced real estate experts, viewing the same property, at about the same time, can offer opinions about the damage here that differ by three hundred per cent. I think one said $88,000.00 and the other said $28,000.00. You might want to wonder about how two experts, as I say, can have such disparate opinion. You might want to ask yourselves if the petitioner had hired Mr. Jerome and the State had hired Mr. O'Reilly, whether they would have given the

---

proceedings, the acquiring authority shall file in the office of the recorder of deeds or town clerk in the city or town where the land or other real property to be acquired is situated, a description of such land or other real property and also a plat thereof and a statement that such land or other real property is taken pursuant to the provisions of this chapter, and the nature of the title to be acquired, whether the same be a fee simple or less than perpetual in duration or subject to any easements or rights-of-way or subject to any reserved or outstanding interests or rights, or subject to any encumbrances, which description, plat and statement shall be signed by the head of the acquiring authority, and upon the filing of such description, plat and statement the title of such land or other real property as set forth in such statement shall vest in the state of Rhode Island * * *."

identical testimony you heard. I am not saying you have to do this, I am merely pointing out some of the things you may wish to consider as you weigh credibility and think in terms of the weight you are going to give to the testimony. As I say, these things can trouble you, so, you jurors face up to it and do the best you can with the evidence that sometimes isn't really as satisfactory as we all wish it could be."

We agree that a trial court should not import to the jury its opinion concerning either evidence or witness credibility. A jury ascribes great weight to judicial pronouncements. Placing the court's imprimatur on one version of the evidence could deprive a litigant of an impartial jury.

A trial court may, however, in its discretion, discuss the evidence in its charge.[4] *Palumbo* v. *Garrott*, 95 R.I. 496, 188 A.2d 371 (1963); *Rossilli* v. *Iacovelli*, 88 R.I. 456, 146 A.2d 709 (1959). For example, the court may point out where testimony conflicts and instruct the jury to determine the truth. *State* v. *Gallogly*, 47 R.I. 483, 134 A. 20 (1926). Indeeed, it is often necessary to discuss the evidence in order to explain the law. *Miller* v. *Bessette*, 80 R.I. 187, 94 A.2d 253 (1953); *Pompei* v. *Cassetta*, 63 R.I. 74, 7 A.2d 198 (1939).

Applying the above standards to the case before us, we find no error. The trial court carefully instructed the jury on the latitude wherein they might consider the expert testimony.[5] And he correctly stated that they alone should determine what weight to give to all of the evidence before them.

---

[4] General Laws 1956 (1969 Reenactment) §8-2-38 states:

"[T]he justice * * * may sum up the evidence therein to the jury whenever he may deem it advisable so to do * * *."

[5] "So, you consider expert testimony in the same manner as you consider the testimony of other witnesses. You determine disputed issues according to your own judgments, and enlightened, but not controlled, by the opinions of experts. You may adopt the opinion of one, reject the other, or vice versa, you may adopt the opinion of the other and reject the former, you can decide not to follow either one, but decide the case fairly on all the evidence including that of the experts."

The crux of this case was the experts' valuation of the taken property. The experts were $60,000 apart. In light of this discrepancy we think it unprejudicial for the justice to suggest — in essence — that the jury might wish to consider whether the expert witnesses were entirely objective. As one court has noted:

> "The experts, as too often happens, disagree leaving the problem, as Tennyson might say, dark with excessive brightness." *International Pulverizing Corp.* v. *Kidwell*, 7 N.J. Super. 345, 354, 71 A.2d 151, 156 (1950).

The petitioners' appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remitted to the Superior Court.

*Raymond J. Surdut,* for petitioners.

*Frank Caprio,* Office of Special Counsel, Department of Transportation, for respondent.