**In re ANN MARIE.**

**No. 85–26–M.P. Appeal.**

Supreme Court of Rhode Island.

Feb. 4, 1986.

---

Thomas M. Bohan, Mary J. Nagle/Sharon P. O'Keefe, Court Appointed Sp. Advocate [CASA], for Dept. for Children and their Families.

William F. Reilly, Public Defender, Barbara Hurst/Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

MURRAY, Justice.

This is an appeal of a mother, hereinafter referred to as Kathy,[1] from a Family Court decree granting a petition of the Department for Children and their Families (DCF or the department) to terminate Kathy's parental rights to Ann Marie, her daughter, in accordance with G.L. 1956 (1981 Reenactment) § 15–7–7, as amended by P.L. 1984, ch. 204, § 3.[2]

The plight of this young child has a long and protracted history, during the course of which we have already had on one previ-

---

**1.** Kathy was the name used by this court in referring to Ann Marie's mother in our prior opinion regarding this matter. *See In re Ann Marie*, —— R.I. ——, 461 A.2d 394 (1983).

**2.** The appellate brief submitted by Kathy's counsel indicates that although the decree was entered on July 26, 1984, the Family Court file docket sheet did not reflect the date on which the decree was actually signed and entered, nor did the file itself contain a signed decree terminating Kathy's parental rights. As a result, appellate counsel for Kathy drafted a second decree that was signed by the trial judge and entered *nunc pro tunc*. In order to dispose of this matter expeditiously, we shall treat the appeal as though it were taken from the decree.

ous occasion the opportunity to address. *See In re Ann Marie,* ── R.I. ──, 461 A.2d 394 (1983). The facts in that case indicate that Ann Marie was born in November 1976 and has been a ward of the state and in foster care since February 1977. On August 14, 1980, DCF, prompted in part by an event that endangered Ann Marie's life, petitioned the trial court to terminate Kathy's parental rights. This petition was dismissed by the trial justice on April 18, 1981 because DCF had failed to make "reasonable efforts" to unify the family as required by § 15–7–7(b)(3).

Subsequently, this court vacated the dismissal of the department's petition and remanded the case in order for Kathy to present evidence on her behalf.[3] On March 16, 1984, the remand hearing was held in Family Court. Kathy's counsel intended not only to refute the allegations made by the department, but also to present evidence about what had occurred in Kathy's life and living situation over the past three and a half years since the filing of the petition. During the direct examination of Edward Mardirossian, Kathy's first witness and her then present live-in boyfriend, he was asked to describe the condition of the apartment that he shared with Kathy. The department's counsel objected on the grounds that the testimony presented by Kathy should be limited to events occurring prior to the filing of the petition in August of 1980.

A discussion ensued between the parties' counsel and the trial judge regarding what limitation, if any, should be placed on Kathy's presentation of evidence. Thereafter the trial judge sustained DCF's objection, but he noted an exception for the record on Kathy's behalf and permitted her counsel to make an offer of proof. The record indicates that this offer of proof would demonstrate that not only was Kathy capable of caring for Ann Marie and providing the child with an appropriate living situation for her upbringing, but also that conditions detrimental to Ann Marie's welfare as outlined by this court in *In re Ann Marie,* ── R.I. ──, 461 A.2d 394 (1983) have been eliminated. The trial judge, however, denied the offer of proof and ruled that Kathy's presentation of the evidence would be limited to events occurring prior to the filing of the termination petition by the department in August 1980. Subsequently, following testimony by Kathy and other witnesses on her behalf, the trial court entered a decree ordering the termination of Kathy's parental rights to Ann Marie. In light of this decision, Kathy has appealed to this court for relief.

■ Kathy contends that the trial court committed reversible error in refusing to permit testimony concerning her living situation and other developments that had occurred in her life during the three and a half years between the petition's filing and the remand proceeding. According to § 15–7–7(c), the trial court is required to find as a condition precedent to termination "that the integration of the child into the home of the parent is improbable *in the foreseeable future due to conduct or conditions not likely to change.*" The statute also instructs the court to look at the initial events that led to the placement of the child in the care of DCF and *"determine whether there has been a change in the circumstances of the parent."* Premised upon our interpretation of the statute and the above language, as set forth, it is clearly evident that the evidentiary scope of the trial court's inquiry in parental termination proceedings under § 15–7–7(c) is not limited to events occurring prior to the petition's filing.

Furthermore, DCF's reliance on *In re David,* ── R.I. ──, 427 A.2d 795 (1981) to support its position that § 15–7–7(c) limits the introduction of evidence to events occurring before the filing of the petition is misplaced. In that case this court upheld a

---

**3.** The procedural history of the initial proceedings reveals that the April 18, 1981 dismissal was rendered at the conclusion of the department's presentation of evidence and prior to Kathy's presentment of her case. *In re Ann Marie,* ── R. I. at ──, 461 A.2d at 395.

trial court's decision that restricted the introduction of evidence during a parental-rights-termination hearing to the year immediately preceding the petition's filing. *In re David*, however, involved a statutory interpretation of an older version of § 15-7-7 than the one under which DCF has petitioned to terminate Kathy's rights in this case.[4] Moreover, we determined in *In re David*, —— R.I. at ——, 427 A.2d at 796 n. 2, the meaning of the phrase "one (1) year next preceding the time of the filing of the petition," language that is not contained in the relevant subsection, § 15-7-7(c), at issue in this case. In light of these distinctions, we do not consider *In re David* to be controlling precedent for the case at bar.

 Although the trial judge committed error in restricting Kathy's presentation of evidence to events that occurred prior to the petition's filing, Kathy's offer of proof, if it had been admitted, would not have changed the outcome of the hearing. Kathy has the burden of showing that the exclusion of her offer of proof had a prejudicial impact on the outcome of the trial. *Kelaghan v. Roberts*, —— R.I. ——, ——, 433 A.2d 226, 232 (1981). In addition, the exclusion of evidence is not reversible error unless it can be said that the evidence not only was material and relevant to a crucial issue but also would have influenced the verdict or had a controlling influence on a material aspect of the case. *State v. Barnville*, —— R.I. ——, ——, 445 A.2d 298, 302-03 (1982). Finally, the offer of proof in issue must be reasonably specific and include a statement of facts to which the witness would testify. *Palazzolo v. Rahill*, 121 R.I. 31, 34-35, 394 A.2d 690, 692 (1978). Based on the above principles and our perusal of the record, we are of the opinion that Kathy failed to show that the exclusion of her offer of proof prejudicially influenced the proceeding's outcome.

 The offer of proof presented by Kathy's counsel was so general in nature that the trial judge could not discern the value and substance of the proposed evidence. Consequently, the trial judge did not abuse his discretion in refusing to admit the proffered evidence. *Kelaghan v. Roberts*, —— R.I. at ——, 433 A.2d at 232. Even if we assume arguendo that the offer of proof is sufficiently specific, it would not be substantial enough to overcome the clear and convincing evidence in the record that supports the termination of Kathy's parental rights.

The record indicates that Kathy is a retarded woman who has difficulty reading, telling time, shopping, keeping her home clean, and avoiding abusive men. Despite the efforts of DCF and other agencies enlisted by the department to assist Kathy, her interest in developing skills that would enable her to take care of her child can best be described as indifferent. DCF also attempted to arrange visits between Ann Marie and Kathy as part of the department's reunification plan. These visits, however, produced little meaningful interaction between mother and daughter, the latter of whom exhibited great reluctance in attending these sessions. Significantly, between the remand and the decision to terminate Kathy's parental rights, both the guardian ad litem and DCF filed motions to terminate visits between Ann Marie and Kathy. These motions were compelled in part by a report from Dr. Beverly Myers, director of Child and Family Psychiatry at Rhode Island Hospital, who indicated that

---

**4.** The previous version of the statute, G.L.1956 (1969 Reenactment) § 15-7-7, as amended by P.L. 1970, ch. 132, § 1, which was at issue in *In re David*, —— R.I. ——, ——, 427 A.2d 795, 796 n. 2 (1981), stated in part:

" 'If the court finds that the parent or parents are under guardianship, or imprisoned in an adult correctional institution under a sentence for a term of not less than three (3) years, or has wilfully deserted for one (1) year next preceding the time of the filing of the petition, or has neglected to provide proper care and maintenance for the child for one (1) year next preceding the time of the filing of the petition, where financially able to do so, or if the child is a permanently neglected child as defined herein * * * it shall decree that the agency shall have the exclusive right to place such child for adoption and to be the sole party to give or withhold consent.' "

the visits were having a negative impact on Ann Marie's emotional well-being. The report also noted that Ann Marie returned from her last visit with bruises on her thigh and buttocks. As a result, all visitation between the child and mother ceased. Finally, Kathy presented no evidence at the remand hearing to explain why during Ann Marie's birthday visit in August of 1979 she attacked her husband with a meat cleaver, an action that resulted in several knife marks being inflicted on the chair in which Ann Marie was sitting. Kathy claims that she had no recollection of the incident because she blacked out. Tests, however, conducted at Rhode Island Hospital uncovered no organic basis for the so-called blackout.

Taking into account the above evidence as set forth, Kathy, despite the efforts of various agencies, has developed neither the necessary skills required to take care of Ann Marie nor any meaningful relationship with her. In addition, the still unexplained blackout incident along with Dr. Myers' report give rise to a legitimate concern regarding Ann Marie's emotional and physical well-being. As a result, we are of the opinion that Kathy's offer of proof, if it had been admitted, would not have changed the outcome of the proceeding.

■ Another contention raised by Kathy is that the trial judge, at the original termination hearing, erred in permitting a DCF witness to testify that the department had plans for Ann Marie's adoption. The thrust of Kathy's claim on this issue is that the admitted testimony was prejudicial to her case. In light of the fact that the trial judge dismissed DCF's petition at the original hearing we find it incomprehensible to suggest that any prejudice was committed against Kathy.

Accordingly, Kathy's appeal is denied and dismissed, the judgment of the trial judge is affirmed, and the papers are remanded to the Family Court.