[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is Plaintiff Elizabeth Cuzzone's motion, pursuant to G.L. 1956 § 18-2-1, to have the Defendants — Paul Plourde, Cheryl Cuzzone, and John F. Cuzzone, III (Trustees) — removed as trustees of the John F. Cuzzone, Jr. Irrevocable Trust and the John F. Cuzzone, Jr. Living Trust. The Defendants filed a timely objection thereto.
 FACTS AND TRAVEL
Before his death in 1995, John F. Cuzzone, Jr. (Settlor) created two trusts — the John F. Cuzzone, Jr. Living Trust and the John F. Cuzzone, Jr. Irrevocable Trust (Two Trusts) — which control several properties located in Barrington, Rhode Island, through the Prime Property Management Company (PPMC) and the County Road Realty Corporation (CRRC). The Plaintiff, Elizabeth Cuzzone, is a daughter of the Settlor, a stockholder of both PPMC and CRRC, and a beneficiary of the Two Trusts.
Two of the Defendants, Cheryl Cuzzone and John F. Cuzzone, III, act not only as trustees of the Two Trusts, but are also beneficiaries. In addition to these roles, both earn salaries and derive various benefits as employees of PPMC and CRRC, companies that manage the properties controlled by the Two Trusts. Cheryl Cuzzone, the Settlor's widow, resides in Florida, maintaining limited contact with PPMC and CRRC. Mrs. Cuzzone is the Settlor's second wife and is not the biological mother of any of the Settlor's children. John F. Cuzzone, III, the son of the Settlor, performs the daily tasks that accompany the management of leased and rented properties for PPMC and CRRC. Paul Plourde is a principal of the law firm of Plourde, Bouge, McLaughlin Moylan, LLC. Mr. Plourde's firm acts as legal counsel to the Two Trusts, as well as to CRRC and PPMC. All of the Defendants were named trustees by the Settlor in the trust instruments.
The Plaintiff seeks to remove the Trustees from the Two Trusts, arguing that their roles as trustee, beneficiary, and employee of the trust controlled companies are inherently at odds with each other. The Plaintiff relies primarily on the case of Montaquila v.Montaquila, 85 R.I. 447, 133 A.2d 119 (1957), wherein the Rhode Island Supreme Court reversed a Superior Court's decree, which held that a cotrustee's status as trustee was incompatible with his status as an employee of a company selling properties that were part of the trust estate because his employment interests conflicted with his duty of loyalty owed to the beneficiaries. In addition to this argument, the Plaintiff urges the Court to remove the Trustees on account of alleged friction and animosity between the Trustees and the Plaintiff. This acrimony purportedly interferes with the administration of the Two Trusts and is detrimental to the beneficiaries' interests. See In re Statter,108 R.I. 326, 275 A.2d 272 (1971).
The Defendants urge the Court to apply the "prudent man rule" as applied in prior Rhode Island decisions and decisions from other jurisdictions. See Rhode IslandHosp. Trust Co. v. Copeland, 39 R.I. 193, 98 A. 273
(1916); Donato v. Bank Boston, 110 F. Supp. 2d 42
(D.R.I. 2000); see also G.L. 1956 § 18-15-1. Likewise, the Defendants ask the Court to adopt the high threshold standard set in other jurisdictions for the removal of trustees. See McNeil v. Bennett, 792 A.2d 190, 220
(Del. 2001) (noting that the removal of a trustee is an extreme form of equitable relief that places a high burden of proof on the beneficiary); Gresham v.Strictland, 784 So. 2d 578, 581 (Fla.App. 4 Dist. 2001) (characterizing the threshold for the removal of a trustee as one "predicated upon a clear showing of abuse or wrongdoing in the actual administration of the [t]rust"); Williams v. Duncan, 55 S.W.3d 896, 902
(Mo.App.S.D. 2001) (noting that removal of a trustee by the Court should be used sparingly). The Defendants assert that language contained in the Two Trusts, in addition to the Settlor's actions while creating the trust instruments, as well as the reasonableness of the compensation paid to the Trustees, does not constitute abuse which would justify removing the Trustees.
 STANDARD OF REVIEW
It is within the jurisdiction and authority of the Superior Court to remove trustees as fiduciaries of a trust. See Garneau v. Garneau, 63 R.I. 416, 9 A.2d 15
(1939). "A trustee shall invest and manage the trust assets solely in the interest of the beneficiaries." G.L. 1956 § 18-15-5.[1] In Sinclair v. IndustrialNat'l Bank, the Rhode Island Supreme Court stated that
 "[b]roadly speaking it is clearly established that a trustee must give undivided loyalty to the trust confided to his care and to its beneficiaries. It is the policy of the law to see that in administering the trust he shall not be tempted in any way by conduct or circumstances to act otherwise than with complete loyalty to the trust and its interest. He must at all times exercise a high standard of honor and avoid all situations and transactions that tend to call his good faith into question and to create in himself rights possibly conflicting with those of the beneficiaries." 89 R.I. 461, 469, 153 A.2d 547, 552
(1959) (citing Dodge v. Stone, 76 R.I. 318, 323, 69 A.2d 632, 634-635 (1949)).
In Rhode Island, a valid trust exists even where there are several beneficiaries who are also trustees. See Gould v. Rhode Island HospitalTrust Co., 53 R.I. 422, 167 A. 119 (1933); see also Restatement (Second)Trusts § 99. A trust will not be deemed void merely because some beneficiaries of the trust possess a dual interest as trustee as well. InArmington v. Meyer the Rhode Island Supreme Court stated that
 "[t]hose courts which have allowed trustees with conflicting interests to administer a trust have done so by reasoning as follows: Where a trustee with dual interests is only one of several trustees, the courts have rationalized that those trustees who do not have an interest in the trust as beneficiaries will serve as a check on the interested trustee." 103 R.I. 211, 221, 236 A.2d 450, 456 (1967).
Although the general rule is that trustees should remove themselves when a conflict of interest arises that may compromise their duty of loyalty to the beneficiaries of a trust, "[t]he most commonly recognized exception to application of the rule is that where the settlor has expressly or impliedly approved of the self-dealing transaction or conflict of interest position." G.Bogert G.Bogert, The Law of Trustsand Trustees § 543 (rev. 2d ed. 1993). In general, Rhode Island courts have been more reluctant to remove trustees who have been named by the settlor, as opposed to those trustees named by the court or third-persons. See In re Statter, 108 R.I. 326, 338, 275 A.2d 272, 277
(1971) (citing Curran v. Green, 18 R.I. 329, 27 A. 596 (1893));[2] seealso Restatement (Third) Trusts § 37 (2003); Bogert Bogert, The Law ofTrusts and Trustees, § 527. Courts in other jurisdictions have also echoed this exception, declining to remove dual interest trustees because the settlor contemplated the potential conflict of interest. See, e.g.,Childs v. National Bank of Austin, 658 F. Supp. 634 (E.D. Mo. 1983) (refusing to remove bank as trustee where bank's chairman was chairman of a corporation in which the trust was the controlling stockholder because the testator had intended the trustee to take an active role in the management of the corporation); Bank of Nevada v. Speirs, 603 P. 2d 1074
(Nev. 1979) (concluding that the absolute limitation against self-dealing was modified by the decedent-settlor because she had contemplated such conflict where the husband held half of the stock in a corporation personally and the other half as trustee for his daughter); Cosden v.Mercantile-Safe Deposit Trust Co., 398 A.2d 460 (Md.Ct.Spec.App. 1979) (finding that a trustee's sale of trust property to a corporation in which he owned 20% interest was too remote to justify removal on the basis of a conflict of interest).
Lastly, as the Rhode Island Supreme Court has yet to articulate the precise quantum of proof necessary for the Court to remove trustees, the law of other jurisdictions proves informative. In particular, both the Delaware Court of Chancery and the Delaware Supreme Court are helpful in crafting such a standard. Both note that because the removal of a trustee is such an extreme form of relief, Courts should exercise their authority sparingly and only upon a showing that the trustee has failed to perform his duties through more than mere negligence. See Capaldi v. Richards,870 A.2d 493, 496 (Del. 2005) (noting that "a Vice Chancellor may only remove a trustee `who fails to perform his duties through more than mere negligence.'" (citing McNeil v. McNeil, 798 A.2d 503, 513 (Del. 2002)).
 DISCUSSION
The language of the Two Trusts suggest that the settlor contemplated and intended the dual interest scenario now before the Court. Furthermore, this language provides that the Trustees possess broad discretionary powers,[3] while encompassing the type of property management performed by PPMC and CRRC.[4] Although the Two Trusts do not explicitly identify the arrangement between the Trustees and PPMC and CRRC, the Two Trusts explicitly contemplate some arrangement whereby the trust-owned properties are properly managed.
In this case, it is significant that the Settlor not only prepared and signed documentation to pay Cheryl Cuzzone a salary from one of the companies, but also named John F. Cuzzone, III, as a trustee knowing he would continue working for some of the various trust owned companies. Likewise, the Settlor not only named Paul Plourde a trustee, but he did so while creating and amending the trust instruments with Mr. Plourde and his law firm. The timing of these actions is critical. In short, the alleged conflicts of interests that exist today are conflicts that existed while the Settlor was alive. To remove the Trustees now would disturb conditions present at the time of the creation of the Two Trusts.
As such, the Court declines at this time to apply Montaquila to this case. First, unlike Montaquila, this case involves trustees/employees who were named by the settlor. This difference is significant because, as noted, courts are traditionally reluctant to disturb the intentions of the settlor. See In re Statter, 275 A.2d at 277. In Montaquila, the Court removed a trustee who had been named by the Court and who had sought increased compensation for his services as a real estate broker. Conversely, in this case, the Court is asked to remove trustees who were named by the Settlor. Secondly, unlike Montaquila, this case involves trustees who are not only employees, but are also beneficiaries. The Court in Montaquila justified its removal of the trustee not because he was an employee, but because his interests as trustee/employee were opposed to the interests of the beneficiaries. In this case, although some of the trustees are also employees of companies managed by the trusts, the fact that they are also beneficiaries likely limits some of the potential conflict addressed by Montaquila. Furthermore, there is testimony before the Court that the administrative costs incurred by John F. Cuzzone, III, and the legal fees paid to Mr. Plourde and his law firm were reasonable. Accordingly, the Court declines now to remove the Trustees solely for potential conflicts of interest that existed before the Settlor created the Two Trusts.
The Court also concludes that any friction that may exist between the parties has not yet risen to a level which encumbers the administration of the Two Trusts. The very fact that the Plaintiff initiated litigation suggests tension between her and the Trustees, but this fact does not, in and of itself, constitute a showing of animosity great enough for the Court to disturb the Settlor's intended Trustees.
This Court has yet to hold a full hearing on the merits. The Plaintiff has neither alleged nor has the record fully developed facts which could potentially rise to the level of "more than mere negligence," permitting the Court to exercise its discretion in removing the Trustees. McNeil,798 A.2d at 513 (citing In Re Catell's Estate, 38 A.2d 466, 469 (Del.Ch. 1944)).
 CONCLUSION
For the above reasons, the Court finds that it is premature to remove the Trustees from the Two Trusts. At this time, the Plaintiff's motion for removal is denied. Furthermore, if a hearing on the merits of the underlying claims asserted in the complaint does not occur by the end of the Two Trusts' tax calender year (December 31, 2005), Plaintiff may apply to the Court for the appointment of an independent accountant to examine and audit, or review the books and records of the Two Trusts and their assets.
Order to enter.
[1] "A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate." Meinhard v.Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928) (Cardozo, C.J.).
[2] The Curran case involved the rightfully archaic question of whether a married woman should, on account of her marital status alone, be removed as trustee. The Court concluded that, despite settled law at the time which prohibited married women from being named as trustees by the Court, it was prudent to honor the judgment of the settlor in determining the honesty and integrity of the trustee.
[3] "[T]he trustees shall have the broadest discretionary powers of investment, reinvestment and management over the assets of the trust estate and . . . shall be entitled . . . in their discretion: . . .
 . . . .
 (i) To rent or lease any property held for and upon such rent, conditions and terms, whether or not extending beyond the duration of any trust held hereunder and with or without agreements for appraisals and/or arbitrations of rent as shall be determined reasonable.
 . . . .
 (q) To employ and pay reasonable compensation and expenses of investment counsel, legal counsel, accountants, agents or others for any purposes hereof."
 Third and Consolidating Amendment to [Living] Trust Agreement, "Trustees Powers" (August 27, 1987) (Compilation of Trust and Corporation Documents, at 98-100).
[4] "[T]he Trustees shall have the broadest discretionary powers of investment, reinvestment and management over the assets of the trust estate including . . . the following:
 (a) To sell at public or private sale, or to exchange, lease, pledge, or mortgage (for periods ending before or after the term of any trust hereunder) in such manner and on such terms as to credit or otherwise as my Trustees deem advisable; to options; to discharge mortgages of record.
 . . . .
 (j) To rent or lease any property held for and upon such rents, conditions and terms, whether or not extending beyond the duration of any trust held hereunder and with or without agreements for appraisals and/or arbitrations of rent, as shall be determined reasonable.
 . . . .
 (r) To employ and pay reasonable compensation and expenses of investment counsel, legal counsel, accountants, agents or others for any of the purposes hereof.
 John F. Cuzzone, Jr. Irrevocable Intervivos Trust,
"Trustees Powers" (November 9, 1993) (Compilation of Trust and Corporation Documents, at 308-310).