**In re KAYLA B.**

**No. 97–173–A.**

Supreme Court of Rhode Island.

June 25, 1998.

Claude F. Lefebvre, Pawtucket, Anthony E. Angeli, Providence, Thomas J. Corrigan.

Gilbert Walker, Joseph Victor Smith, Providence.

**ORDER**

This case came before the Supreme Court on the appeal of the respondent, Richard Howard, from the termination of his parental rights to his daughter, Kayla B. After a conference before a single justice of this court, the case was referred to the full court at a session in conference in accordance with Rule 12A(3)(b) of the Supreme Court Rules of Appellate Procedure. At this time, we proceed to decide this case without further briefing or argument.

Kayla was born on December 25, 1989 to the respondent and Betty Lee Britton. At that time, the respondent was eighteen years old, and Betty Lee was fifteen years old and in the custody of the Department of Children, Youth and Families (DCYF). Betty Lee's parental rights to Kayla have also been terminated, and no appeal has been taken from that decision.

Kayla first came into the custody of DCYF when she was approximately two and a half months old. She has been in foster care, sometimes simultaneously with her mother, since that time. The respondent, along with Betty Lee, met with various social workers from DCYF to review case plans for Kayla. Almost from the beginning DCYF recommended parenting classes and counseling for the respondent to help alleviate problems he had with domestic violence, impulse control, and alcohol abuse. In particular, several case plans recommended that respondent at-

tend a Brother–to–Brother program for domestic violence. The respondent never attended the Brother–to–Brother classes. Also, during the first years of Kayla's life, the respondent spent approximately two and a half years in prison. While in prison, he completed a course on parenting skills.

There was evidence that the interactions between Kayla and her father during sporadic visits was appropriate, and that he demonstrated an abiding interest in her even while he was incarcerated. Nevertheless, visits were suspended after Kayla began having adverse reactions to the visits. Several social workers who evaluated Kayla opined that these adverse reactions were related to anxiety she had about being separated from her foster mother.

At the conclusion of the trial, the trial justice reviewed all of the evidence. She focused particularly on the respondent's incarceration and his failure to comply with the counseling recommended by DCYF. She determined that except for taking parenting classes at the Adult Correctional Institute, he had done "absolutely nothing" to address the core concerns expressed by DCYF regarding domestic violence and substance abuse. She found that his failure to address these significant issues could result in the child suffering physical and/or emotional harm if placed in his care. She also found that the child had been in DCYF's care for more than six months under circumstances which rendered her integration into the respondent's home improbable in the foreseeable future.

In reviewing the ruling of a Family Court judge on a termination petition, this court must examine the record to determine whether the findings of the trial judge are supported by legal and competent evidence. Those findings are entitled to great weight and will not be disturbed unless they are clearly wrong or unless the trial judge overlooked or misconceived material evidence. *In re Nicole B.*, 703 A.2d 612, 615 (R.I.1997); *In re Antonio G.*, 657 A.2d 1052, 1057 (R.I. 1995). In this case, the trial justice carefully applied the pertinent statutory guidelines prescribed by G.L.1956 § 15–7–7.[1] We conclude that there was sufficient evidence to support the trial justice's findings that the respondent was unfit.

The respondent has pointed out that there was a two-year delay between the filing of the termination petition and the judge's decision in this case. He argues that because DCYF ceases to provide services beyond visitation once a termination petition is filed the delay itself was "tantamount to termination." He also argues that the finding of unfitness makes little sense in light of the fact that he and Betty Lee have another child, Corey, with whom he has an ongoing relationship. The delay in this case was indeed unfortunate, and we recognize the need to proceed expeditiously in all cases in which the permanent placement of children is at issue. Nevertheless, such a delay in itself is not a reason to reverse the trial justice's ruling. Nor is the fact that the father has apparently shown himself to be a more responsible parent to Kayla's younger brother. The question here is whether the trial justice was correct in finding there was clear and convincing evidence of his unfitness as a parent in Kayla's case. We are persuaded that the trial justice had sufficient evidence before her to come to this conclusion.

Accordingly, the respondent's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers are remanded to the Family Court.

---

**1.** this statute was amended in 1994. The sections relied on by the trial justice are now found in § 15–7–7–(a)(2)(i) and § 15–7–7(a)(3).