**In re MARCELLA.**

No. 2001–471–Appeal.

Supreme Court of Rhode Island.

Nov. 14, 2003.

Thomas J. Corrigan, Frank P. Iacono, Jr., for Plaintiff.

Paula Rosin, Providence, for Defendant.

Before WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on October 7, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The respondent (respondent or mother) has appealed from a Family Court judgment terminating her parental rights to her daughter Marcella, who was born on December 30, 1990. After hearing the arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

### Facts and Travel

The record discloses that Marcella is one of mother's six children. In 1996, New York social services contacted the Depart-

ment of Children, Youth and Families (DCYF) to request a home study concerning visitation with two of mother's children who were in foster care in New York. At that time, mother already had voluntarily placed her son Ivan in a psychiatric hospital because of his behavioral problems; however, her daughters Leonora R., Katira and Marcella were residing with her in Providence, Rhode Island. Based upon mother's recent hospitalization for opiate withdrawal and her mental health problems, DCYF determined that mother was overwhelmed with caring for the children currently in the home and, consequently, denied the New York visitation request. DCYF created a case plan aimed at reunifying Ivan with mother and assisting her with the three children currently in her care. However, despite these case plans and referrals to drug treatment programs, the three children were removed from mother's care in March 1999 after mother's substance abuse relapse.

The evidence discloses that DCYF prepared numerous case plans, each with the goal of reunifying mother with her children. The objective of each plan was to help mother develop and maintain a substance-free lifestyle. Testimony of several counselors from various treatment programs establish that mother's periods of sobriety were sporadic and brief. At times, mother would disappear for several weeks or months, only to be discovered at the Adult Correctional Institutions or off on various road trips in an attempt to "straighten out." Despite DCYF's numerous attempts to assist mother with her parenting skills, mental health issues and substance abuse problems, mother failed to complete any of her case plans. Consequently, in July 2000, DCYF filed a petition seeking the termination of her pa-

rental rights to Ivan, Leonora R. and Marcella.[1]

At the time of trial, Marcella was in DCYF custody and had been living in a pre-adoptive home with her paternal aunt for approximately one year. Her aunt testified that Marcella was adjusting well, that her grades were improving, and that she wished to adopt the child.

In a written decision, the trial justice found that DCYF had proven by clear and convincing evidence that: (1) Marcella had been in the care and custody of DCYF for more than twelve months, (2) that despite periods of sobriety, mother was "far less than compliant" with the numerous treatment plans that DCYF arranged for her, and (3) despite some progress at the time of trial, mother was unfit. Accordingly, having found mother to be unfit concerning all three children, the trial justice determined that termination of mother's parental rights to Marcella was in Marcella's best interests.

## Standard of Review

When reviewing a termination of parental rights decree, "this Court examines the record to determine whether legally competent evidence exists to support the findings of the trial justice." *In re Brianna D.*, 798 A.2d 413, 414 (R.I.2002) (per curiam) (citing *In re Kristen B.*, 558 A.2d 200, 205 (R.I.1989)). In examining the record, the findings of a trial justice are entitled to great weight and will not be disturbed unless the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *Kristen B.*, 558 A.2d at 204. To protect a parent's fundamental right to the custody and care of his or her children, this Court has determined that a finding of unfitness must be made before a decree terminating parental rights may issue. *In re Kristina*

1. Katira had successfully been reunited with her father.

*L.*, 520 A.2d 574, 580 (R.I.1987). After a finding of unfitness, the best interest of the child outweighs all other considerations. *Kristen B.*, 558 A.2d at 203. The state's allegations to support termination must be proven by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S.Ct. 1388, 1391–92, 71 L.Ed.2d 599, 603 (1982).

## Discussion

■ On appeal, respondent contends that the trial justice erred in finding her unfit because at the time of the hearing she had been sober for three months, had regularly visited her children, had obtained secure housing and was in a healthy relationship. Mother's argument is based upon her assertion that under *In re Ann Marie*, 504 A.2d 464 (R.I.1986), "unfitness must exist *at the time of the termination hearing,*" and consequently, the trial justice erred when he "failed to acknowledge" mother's accomplishments in the months before trial. (Emphasis added.)

The respondent's argument is unpersuasive. Although she correctly asserts that evidence of sobriety at the time of trial should be admitted and considered by the trial justice, her assertion that such progress will necessitate denial of the termination is incorrect. In a series of opinions, this Court has upheld numerous termination decisions despite evidence of sobriety at the time of trial. *In re Crystal C.*, 765 A.2d 842 (R.I.2001) (per curiam); *In re Maya C.*, 764 A.2d 116 (R.I.2001) (per curiam); *In re Eric K.*, 756 A.2d 769 (R.I. 2000) (per curiam); *In re Kadijah A.*, 749 A.2d 587 (R.I.2000) (per curiam); *In re Jovanny R.*, 725 A.2d 891 (R.I.1998) (mem.). In fact, several of these opinions upheld a finding of unfitness when the parent had remained sober far longer than respondent's three months of sobriety. *See Crystal C.*, 765 A.2d at 843 (mother testified that she had been sober for one year before trial); *Maya C.*, 764 A.2d at 118 (record revealed that at the time of trial mother had been in treatment for more than one year and mother testified that she had been sober for eight to nine months).

In this case, the trial justice properly admitted the testimony of Mary Jane Boucher (Boucher), a drug counselor at the CODAC program. Boucher testified that she had been treating mother from December 2000 through the time of trial in February 2001. She indicated that mother's treatment consisted of weekly self-reporting, individualized therapy and random urine screens. Mother was compliant with treatment during the six weeks preceding trial; however, Boucher was unable to predict how long mother would have to continue treatment for her substance abuse problems. The only witness to testify for respondent was respondent herself, who testified that she was engaged in drug counseling at CODAC and intended to remain sober.

Before terminating mother's parental rights, the trial justice gave adequate consideration to evidence of her sobriety and her renewed treatment initiatives. In a written decision, the trial justice found that although mother occasionally had maintained sobriety, "these periods were few and far between." Specifically, the trial justice noted that although he hoped mother had changed "for her own well-being," given her past history, it was "too soon to determine if, indeed, the leopard has changed her spots." In separate findings, the trial justice considered all the testimony adduced at trial, including the favorable testimony of both Boucher and respondent. Clearly, the trial justice was troubled by this case and made careful findings with respect to each child, in light of his conclusion that mother was unfit.

Our review of the record indicates that there was ample evidence to support the trial justice's determination that respondent was unfit to parent Marcella. The record clearly supports the finding that Marcella had been in the care and custody of DCYF for at least a twelve-month period and that DCYF had created numerous case plans for mother with the goal of reunification and maintaining a substance-free lifestyle. Further, there is ample record support that mother failed to comply with any reunification plan. With the exception of the three months immediately before trial, mother's visits with her children were sporadic and often unproductive. Despite all these failings, respondent asserts that the efforts she made to straighten out her life in the three months preceding trial somehow trumps the many times she has failed her children. Although we acknowledge mother's accomplishments, this is yet another case of a parent who recognizes her destructive behavior and neglect of her children and makes efforts that are too little and too late.

Upon finding respondent to be unfit, the trial justice also found by clear and convincing evidence that termination was in Marcella's best interests. The trial justice based his decision to terminate upon the fact that the child was in a stable home with a paternal aunt who wished to adopt. He specifically noted that Marcella had "bonded well with her new family" and was "already considered to be a member of that family."

At oral argument, mother addressed the trial justice's refusal to terminate her parental rights concerning Ivan and Leonora R., but not to Marcella. We are not troubled by this ruling. At the time of trial, Ivan needed years of residential care before he could be placed in a pre-adoptive home, and his contact with mother and hospital staff was the only family he had ever known. Leonora R. had established "some sort of relationship" with her mother, expressing concern for her well-being at times. Given these circumstances and the fact that neither child had been placed in pre-adoptive homes, the trial justice concluded that termination was not in the best interests of Ivan and Leonora R., despite his finding that mother was unfit. We also note that this Court has upheld several decisions in which parental rights have been terminated for one child but not for that child's siblings. *See In re Kayla B.*, 711 A.2d 1150 (R.I.1998) (mem.); *In re Cody*, 706 A.2d 1336 (R.I.1998) (mem.); *In re Joseph G.*, 702 A.2d 1169 (R.I.1997) (mem.); *In re Frederick*, 546 A.2d 160 (R.I.1988). These cases underscore the importance of determining the best interest of the child; this is not a one-size-fits-all analysis. An appropriate application of the principle of the best interest of the child necessitates that each child be considered separately.

Upon reviewing the record, we note the mother's long history of substance abuse, inability to comply with DCYF case plans and failure to successfully complete a single treatment program, and we are satisfied that the trial justice gave adequate consideration to the respondent's progress at trial. Despite this progress, the record amply established clear and convincing evidence to support a finding of unfitness and a decree terminating the respondent's parental rights to Marcella.

### Conclusion

For the foregoing reasons, the judgment of termination of parental rights entered in the Family Court is hereby affirmed and the papers in the case are remanded to the Family Court.