**In re CARLOS F. et al.**

**No. 2002–718–Appeal.**

Supreme Court of Rhode Island.

June 10, 2004.

Thomas J. Corrigan Jr., Washington Crossing, PA, for Plaintiff.

Catherine A. Gibran, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The respondent, Luzcelina Feliciano (respondent or mother), appeals from a Family Court judgment terminating her parental rights to five of her children, Kelvin, Luis, Adrine, Neisha, and Sasha.[1] This case came before the Supreme Court on May 10, 2004, pursuant to an order directing the parties to appear and show cause

---

1. The respondent's eldest child, Carlos F., was not named in the termination of rights petition and is not involved in these proceedings.

why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

The Department of Children, Youth and Families (DCYF) first encountered respondent and her children on January 21, 2000, when respondent was arrested and charged with possession of heroin with intent to deliver. At the time of her arrest, respondent was accompanied by two of her children, Carlos and Neisha, who came into DCYF's custody and were placed in non-relative foster care. As a result of her arrest, respondent entered a plea of *nolo contendere* and was sentenced to the Adult Correctional Institutions for a term of five years, with six months to serve.

The respondent's relationship with DCYF was neither cooperative nor productive. She initially declined to convey any family history and refused to sign medical releases. The mother also failed to disclose to DCYF that she had three other children, who were being cared for by a friend. On April 2, 2000, while incarcerated, respondent gave birth to Sasha, who was also placed in non-relative foster care. At a meeting before her release from prison, respondent informed her DCYF caseworker, Karen Harvey (Harvey), of her other children, Adrine, Luis and Kelvin.

After she was released from prison, respondent retained custody of Adrine, Luis and Kelvin; but they eventually were removed because of her failure to cooperate with substance abuse treatment. Thereafter, respondent identified her mother, Mildred Vargas (Mrs. Vargas), as a possible caretaker for her five children. At the time, however, Mrs. Vargas was a resident of Puerto Rico. To place the children with Mrs. Vargas in Puerto Rico, DCYF was required to seek a home study relative to the suitability of Mrs. Vargas and the conditions of her home, through the Interstate Compact on Placement of Children (ICPC). Upon learning that Mrs. Vargas was a possible placement, Harvey completed the necessary ICPC paperwork, which then was forwarded to a social service agency in Puerto Rico. Although Harvey contacted the ICPC administrator about the status of the ICPC, Puerto Rican authorities never forwarded Harvey a completed report.

Despite DCYF's efforts, respondent failed to successfully complete a single substance abuse treatment program and she repeatedly missed scheduled visits with her children. On April 6, 2001, DCYF filed termination of parental rights petitions for Neisha, Sasha, Kelvin, Luis and Adrine. After several days of testimony, the trial justice terminated respondent's parental rights on the basis of G.L. 1956 §§ 15–7–7(a)(2)(iii) and 15–7–7(a)(3).

■ On appeal, respondent admits that despite DCYF's efforts to assist her rehabilitation, she has not yet overcome her drug and alcohol dependency. Although respondent does not challenge the trial justice's findings of parental unfitness, she alleges that the trial justice erred in failing to consider placement of the children with their maternal grandmother. The respondent points out that in November 2001, three months before the termination hearing, Mrs. Vargas returned to Rhode Island and presented DCYF with a document purported to be a home study conducted by Puerto Rican social services that recommended placement in Mrs. Vargas's home. Mrs. Vargas also testified that she and her husband had permanently relocated to Rhode Island to care for respondent's children and that she was willing to

cooperate with DCYF if she were granted custody. Citing G.L.1956 § 14–1–2, respondent argues that the trial justice should have considered placing the children with Mrs. Vargas pursuant to the "codified public policy of this state * * * '[t]o conserve and strengthen the child's family ties wherever possible.'"

It is well settled that when reviewing a termination of parental rights decree, this Court examines the record to determine whether the findings of the trial justice are supported by legally competent evidence. *In re Brianna D.,* 798 A.2d 413, 414 (R.I.2002) (per curiam). "[T]he findings of a trial justice are entitled to great weight and will not be disturbed unless the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." *In re Marcella,* 834 A.2d 717, 718 (R.I.2003) (per curiam). To protect a parent's fundamental liberty interest in the care and maintenance of his or her children, parental rights may not be terminated until the state proves by clear and convincing evidence that the parent is unfit. *In re Nicole B.,* 703 A.2d 612, 615 (R.I.1997). "[O]nce a parent has been adjudged unfit, [however,] the balance shifts so that the 'best interests of the child outweigh all other considerations.'" *Id.* (quoting *In re Kristen B.,* 558 A.2d 200, 203 (R.I.1989)).

After reviewing the evidence in this case, the trial justice found that respondent was an unfit parent because of her chronic substance abuse. Once the finding of unfitness was made, the burden of proof shifted to respondent to prove that Mrs. Vargas was an appropriate person for placement. The respondent failed to meet this burden of proof.

At trial, respondent argued that the children should be placed with Mrs. Vargas based upon a home study purportedly conducted by Puerto Rican authorities. The authenticity of the home study document, which was hand-delivered to DCYF by Mrs. Vargas, was not verified before trial. Although the document provided information about the size of Mrs. Vargas's home and her finances, it failed to provide a criminal background check or an evaluation of Mrs. Vargas's parenting skills. Also, at the time of trial, Mrs. Vargas represented that she had abandoned her home in Puerto Rico and permanently relocated to Rhode Island.[2] The record clearly supports the trial justice's finding that the home study document was "insufficient for placing the children in Puerto Rico." The trial justice's refusal to consider placement of the children with Mrs. Vargas was further supported by respondent's failure to present any evidence about the suitability of Mrs. Vargas's Rhode Island home or her ability to care for the children.

The respondent also asserts that "the court and the department were fully satisfied with the children's present (and, in some cases, pre-adoptive) placements, to the detriment of the grandmother." This Court previously has recognized that the termination of parental rights involves a balancing of three interests, namely, those of the state, the child, and the natural parents. *In re Kristina L.,* 520 A.2d 574, 579 (R.I.1987). Although we recognize the importance of maintaining familial ties, the overriding consideration is the best interest of the child, not the interests of the state nor the natural parent, and most especially not the interests of a family member. The trial justice acted within his

2. It was disclosed at oral argument that Mrs. Vargas has returned to Puerto Rico.

discretion in determining that the best interest of the children would be served by enabling them to remain in their respective placements in the stable and familiar pre-adoptive homes in which they were residing.

For the reasons stated herein, we affirm the judgment of the Family Court. The record shall be remanded to the Family Court.

Justice FLAHERTY and Justice SUTTELL did not participate.